Myers, J.
 

 This cause raises a question of implied warranty and negligence in the sale of an article inherently dangerous. Plaintiff purchased a product known as Roux Shampoo Tint for use as a hair dye in her beauty parlor. It was purchased from a local Cleveland dealer alleged in the petition to be the agent of the defendant distributor, George Kremer. Whether there was privity of contract between plaintiff and defendant does not clearly appear. In using the hair dye on a customer plaintiff was injured by reason of its containing a poisonous substance. The injurious substance in the product caused plaintiff to suffer from dermatitis, a condition which affected her face, hands and arms, causing her skin to rise and be swollen in a very painful manner. By reason of her injuries plaintiff suffered great pain and was unable to carry on her business and even her household work at home. What obligations and rights are involved in the sale and delivery of such a product? Do they all flow from the contract of purchase itself or may there be common-law rights flowing in the same channel in such manner that the violation of one may also be a violation of the other?
 

 We may say that in the execution of a contract a common-law right beyond the contract may be violated —the right not to be injured in person or property. The buyer of a product not only has a contractual
 
 *294
 
 right that the product will be as warranted, express or implied, but the further common-law right not to be harmed or injured by some unknown ingredient or defect when the product is used in the manner intended. In the instant case, the Court of Common Pleas held that the action sounded in tort, while the Court of Appeals ruled that the case rested on implied warranty alone.
 

 In the sale of an article, the seller owes a duty beyond the mere contract. Not only must the goods be according to contract, but if used-according to directions they must not carry harm to the buyer. In Clerk and Lindsell on Torts (9 Ed.), page 2, it is said: “There may be a tort which arises out of breach of contract and yet is independent of it.” In the manufacture and sale of goods, the seller may not include therein, beyond the terms of the contract, anything which, unknown to the buyer, will cause the latter injury. This extra duty to refrain from including in the article any dangerous substance unknown to the buyer may be illustrated in the bestowal of a gift from one to another. Even though there be no purchase price, one has no right to bestow an article containing a hidden danger on another as a gift, knowing that the use thereof by such other will cause the latter injury. But where there is consideration, the responsibility to refrain from including in any such article any hidden danger is very much greater. There is the obligation that the goods will be fit for the particular purpose intended and the further duty to refrain from including therein any hidden danger unknown to the buyer. Failure to meet the first obligation is a breach of warranty, express or implied; failure to meet the second duty is negligence.
 

 A good discussion of this subject is found in
 
 Galveston, H. & S. A. Ry. Co.
 
 v.
 
 Hennigan,
 
 33 Tex. Civ. App., 314, 76 S. W., 452, as follows: “The word ‘tort’ denotes an injury inflicted otherwise than by a mere
 
 *295
 
 breach, of contract; or, to be more nicely accurate, a tort is one’s disturbance of another in a right which the law has created, either in the absence of contract or in consequence of the relation which a contract had established between the parties. Bishop on Non-contract Law, Sec. 4. In this. definition the term ‘right’ is employed strictly in a legal sense; that is, ‘in the sense it implies something with which the law invests one person, and in respect to which, for his benefit, another, or perhaps all others, are required by the law to do or perform acts, or to forbear or abstain from acts.’ Cooley on Torts, 23. Though a tort is a breach of a duty which the law, in distinction from a mere contract, has imposed, yet the imposition of it may have been because of a contract, or.because of it and something else combining, when otherwise it would not have created the duty. In such a case the party injured by the nonfulfillment of the duty may proceed against the other for its breach or for the breach of the contract, at his election, for'one overlaps the other.” The negligence involved may be the breach of a duty imposed by common law or by statute.
 
 Pine Grove Poultry Farm, Inc.,
 
 v.
 
 Newton Ry Products Mfg. Co., Inc.,
 
 248 N. Y., 293, 162 N. E., 84, Also see
 
 Devlin
 
 v.
 
 Smith,
 
 89 N. Y., 470, 42 Am. Rep., 311.
 

 Circumstances constituting a breach of warranty may also be negligence. If the circumstances concern only the question of whether the product may properly be used for the purpose intended or represented, there is no negligence involved. But if the product sold is later found to be unfit for the use intended and also, by reason of some unknown dangerous ingredient, injures the buyer, there is not only a breach of warranty but also negligence. In such a case the buyer, subject to the provisions of Section 11306, General Code, may incorporate in his complaint all the ultimate facts tending to prove not only the breach of warranty but also the negligence involved.
 

 
 *296
 
 “A wholesale druggist sold to a retailer a dangerous drug bearing a false label. The retailer sold it to a doctor who sold it to a patient and the latter took it on the faith of the label and was thereby injured. Despite the absence of privity the court held the wholesale druggist liable to the injured party.” Underhill, The Law of Torts (Canadian Ed.), 36;
 
 Thomas
 
 v.
 
 Winchester
 
 (1852), 6 N. Y., 397, 57 Am. Dec., 455. Approved in
 
 Dominion National Gas Co.
 
 v.
 
 Collins
 
 (1909), A. C., 640.
 

 Situations may arise where the facts and circumstances are so involved that the pleader is not certain whether the issue is one of implied warranty or negligence, or both. The facts and circumstances may be so complex that the question of whether there has been a breach of implied warranty, or negligence, would be for the jury under proper instructions from the court. “ Whether a given thing is dangerous may be sometimes a question for the court and sometimes for the jury.”
 
 MacPherson
 
 v.
 
 Buick Motor Co.,
 
 217 N. Y., 382, 389, 111 N. E., 1050, L. R. A., 1916F, 696. The pleader is under no obligation to allege conclusions of law.
 
 Continental Supply Co.
 
 v.
 
 Fisher Oil Co.,
 
 150 La., 890, 91 So., 287. He is required in his complaint to set forth only the ultimate facts.
 

 In the instant case the plaintiff alleged both warranty and negligence. The plaintiff purchased the hair dye known as Roux Shampoo Tint for a specific purpose. The evidence introduced tended to prove that the hair dye was not only unfit for the purpose intended but also contained a poisonous ingredient unknown to the plaintiff and which in the use of the product on a customer injured the plaintiff. Under such circumstances it was not necessary for the plaintiff, in advance, to determine whether her remedy was in contract or tort, or both, so long as she set forth the ultimate facts in such a manner that the court could properly determine the rule of law to be applied. All
 
 *297
 
 the code requires is that the petition contain a statement of facts constituting a cause of action, in ordinary and concise language, a demand for the relief to which the plaintiff claims to be entitled, and if the recovery of money is demanded, the amount shall be stated. Section 11305, General Code.
 

 The plaintiff, having alleged the ultimate facts, was entitled in the trial to present such evidential facts as would tend to prove the allegations of her petition. At the close of the evidence presented by the plaintiff, the defendant made a motion that the plaintiff be required to elect whether to proceed upon the warranty or tort theory, and the court in passing on the motion, held that there was only one allegation of the petition that covered breach of warranty and that there was no evidence to support it, and further held that the case would proceed upon the theory of negligence alone. While in the state of the record, it is not necessary for this court to determine whether there was evidence to support an allegation of a breach of warranty, we are obliged to state that the allegations of the petition would permit introduction of evidence for the purpose of proving a breach of implied warranty as well as negligence.
 

 In respect to the obligations of a seller, Pollock on the Law of Contracts (12 Ed.), 555, has the following: “Wherever the parties have come into such a relation that a duty to take proper care can be established without reference to any contract, there the violation of that duty by negligence is a tort, whether it consist in commission or in omission and whether there be in fact a contract or not.” On pages 547 and 548 of Pollock it is also said: “Wherever there is a contract to-do something the obligation of the contract is the only obligation between the parties with regard to the performance, whether there was a duty antecedent to the contract or not. But injury which would have been a
 
 *298
 
 tort, as a breach of duty existing at common law, if there had not been any contract is still a tort.”
 

 In
 
 Davis
 
 v.
 
 Van Camp Packing Co.,
 
 189 Iowa, 775, 176 N. W., 382, it was held that a person seeking damages from a food manufacturer for injuries caused by eating unfit food was not compelled to elect between implied warranty and negligence as a ground for recovery.
 

 Where the product is manufactured and sold with the knowledge that it will come into contact with the user or operator, the manufacturer or distributor has not only the obligation that the product will be according to the contract, express or implied, but the added common-law duty of not placing or having anything in the product that will injure the buyer when used as intended. An action for the violation of the former sounds in contract; an action for the violation of the latter is in tort, yet both may be joined in the same complaint. All that is necessary is that the petition recite the ultimate facts as provided for in the code and a demand for the relief to which the petitioner is entitled. That having been done, it is for the court to determine the correct rule of law to be applied.
 

 In the instant case the article sold was of an inherently dangerous character. It was used by the plaintiff according to directions. In addition to personal injuries, plaintiff suffered a loss in her business by reason of her former customers refusing to allow her to work on them on account of the appearance of her skin on her face, hands and arms. The damages for personal injuries were provable under the allegations of negligence in the petition. These injuries she suffered by reason of a violation of her common-law right not to be injured through the fault of another. This right not to be injured rested on a common-law right independent of any contract, express or implied.
 

 Where a person suffers injuries through the negli
 
 *299
 
 gence of another all damages, whether to the person or business, proximately resulting from such injury, are provable. In the case of
 
 Genesee County Patrons Fire Relief Assn.
 
 v.
 
 L. Sonneborn Sons, Inc.,
 
 263 N. Y., 463, 189 N. E., 551, it was held that privity of contract between a manufacturer and a person injured through the use of a manufactured article is not necessary to justify recovery of damages for the manufacturer’s negligence. In that case a servant of a local dealer was engaged in applying- waterproofing preparation manufactured by the defendant, L. Sonneborn Sons, Inc., to the interior of a water tank when an explosion occurred in the tank which resulted in the destruction of the barn and certain personal property, by fire. The court there held that the manufacturer, who had sold the product to the local contractor, would be held liable for the damages and said in its opinion, on page 469: “While it is true that if appellant’s neglect was wrongful and threatened some injury, it is only liable for the natural consequence flowing from the wrong, still we believe that it was a question of fact whether a reasonably foreseeable explosion and fire in a silo or water tank in or adjacent to a barn would result in the burning of the barn. In other words, the burning of the barn was properly found to be a natural result of the appellant’s wrongful conduct.” So in the instant case evidence as to damages suffered by plaintiff, whether by reason of pain, mental anguish, inability to perform her own household work or inability properly to carry on her business as a beauty parlor operator, was admissible under the allegations of negligence in the petition. The Court of Common Pleas was not in error in its instructions to the jury in respect to negligence.
 

 It is claimed by the defendant that the Court of Common Pleas committed prejudicial error in allowing a witness, who was the assistant city chemist of Cleveland, to perform a so-called experiment while
 
 *300
 
 testifying. The witness, who had had many years of experience as a chemist, in order to illustrate the -action of hydrogen peroxide, placed his finger in a solution of hydrogen peroxide one hundred volume and then removing his finger from the solution, showed the jury how it had whitened his finger, after which he placed his finger in a glass of water. This testimony was admitted by the court in connection with the other evidence of the city chemist in regard to the effect of the hair dye in question on the human skin. There was no claim made that the witness was not qualified for want of education and experience as a chemist. Hydrogen- peroxide is a well known product and we find no error in the action of the court in permitting the witness to testify as the record indicates.
 

 It is urged on behalf of defendant that inasmuch as he was only the distributor and not the manufacturer, he should not be held liable for any defect or injurious substance in the hair dye known as Roux Shampoo Tint. It is also urged that since the product was sold in package form that he should not be held liable any more than a retail druggist who might have sold it over the counter. The case of
 
 McMurray
 
 v.
 
 Vaughn’s Seed Store,
 
 117 Ohio St., 236, 157 N. E., 567, is cited in support of this contention. The instant case is readily distinguishable from that case. There the product sold by the dealer was shipped direct to the buyer by the manufacturer, the dealer not having any opportunity for inspection. Moreover the article sold in bags was shredded cattle manure, a product not inT herently dangerous as in the instant case. The defendant here was not a mere retailer who sold the hair dye to the plaintiff in package form. The defendant was the distributor for the manufacturer of Roux Shampoo Tint. The record reveals that the defendant, George Kremer, was doing business as The Roux Distributing Company. The advertising leaflet, introduced as plaintiff’s Exhibits A and G, contains the following:
 

 
 *301
 
 “Roux Shampoo Tint is manufactured by “Roux Laboratories, Inc.
 

 “and distributed by “Roux Distributing Company “9 East 45th Street, New York, N. Y.
 

 “162 North State Street, Chicago, 111.
 

 “1361 So. Sierra Bonita St., Los Ángeles, Calif.”
 

 Since neither the defendant nor any of his agents or employees testified in the case the record does not reveal whether the defendant had any interest in Roux Laboratories, Inc., the manufacturer of Roux Shampoo Tint. However, there is enough evidence in the record from which the jury could properly conclude that the defendant as the distributor not only knew, or should have known, the character and composition of the product being sold but also that there was a general representation to the public by the defendant that Roux Shampoo Tint, if used according to directions, was safe and proper in every respect. The advertising leaflet, already referred to, stated that ‘ ‘ The name ‘Roux’ guarantees the quality!” It also contained language as follows: “Roux Shampoo Tint washes out ‘Creeping Grey’; shampoos life and color into the hair; penetrates the hair, and does not wash out, streak or run; imparts a natural life-like tone; does not create a glossy superficial appearance. If you use the proper color of Roux Shampoo Tint for the application, and allow the color to develop thoroughly, human eyes should not be able to detect anything unnatural in the appearance of the hair. Eliminates the need for softening. Also, you will find preliminary shampooing absolutely unnecessary unless the hair is particularly oily or greasy. Is effective and very desirable for toning down over-bleached hair. Does not interfere with permanent waving.” However, instead of being a safe product to use, the hair dye contained a poison. A physician, who testified as a witness, upon being
 
 *302
 
 asked what, in his opinion, caused the dermatitis with which plaintiff was suffering, stated: “It was the poison in the preparation, and not what we would call super sensitivity.” It carried harm to the buyer, thereby violating the common-law right not to be injured through the fault of another. There was negligence.
 

 We next consider the claim of the defendant that the plaintiff was guilty of contributory negligence in the use of Roux Shampoo Tint in her beauty parlor. It is claimed that the plaintiff failed to observe the directions in the leaflet which read as follows: “If any similar Shampoo Tint has been regularly used, no test is required. Test is only for first application. If a period of six months between applications is permitted to elapse, the test should be remade.” We find from the record that there was evidence tending to prove that these instructions had been followed. It was for the jury, therefore, under proper instructions of the court, to determine this issue. The trial court instructed the jury at length on this question, including the following: “That even though defendant was negligent in the preparation of Roux Shampoo Tint and it did contain harmful ingredients which would be harmful generally to persons using the same when used as intended and as directed, the plaintiff cannot recover in this action even though those facts be true, if she herself failed to exercise ordinary care for her own safety in the use or in preparation for the use of the same.” We find no error in the instructions of the court to the jury on the issue of contributory negligence.
 

 “There are many decisions to the effect that one who prepares in bottles or packages foods, medicines, drugs, or beverages and puts them on the market is charged with the duty of exercising due care in the preparation of these commodities and under certain
 
 *303
 
 circumstances may be liable in damages to the ultimate consumer.”
 
 Corum
 
 v.
 
 Tobacco Co.,
 
 205 N. C., 213, 171 S. E., 78, and other cases there cited.
 

 While the instant case concerns a product inherently dangerous, the principle involving the breach of a common-law right in. connection with a contract has been extended in recent years. One of the leading American cases is
 
 MacPherson
 
 v.
 
 Buick Motor Co., supra,
 
 in which the opinion was written by Mr. Justice Cardozo while a member of the New York Court of Appeals. The first paragraph of the syllabus in that case reads as follows:
 

 “If the nature of a finished product placed on the market by a manufacturer to be used without inspection by his customers is such that it is reasonably certain to place life and limb in peril if the product is negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. This principle is not limited to poisons, explosives and things of like nature, which in their normal operation are implements of destruction.”
 

 In the opinion, on page 390, it is said: “We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.”
 

 In the case at bar the defendant owed to the prospective purchaser of Roux Shampoo Tint not only the duty that the hair dye would serve the purpose set forth in the advertising leaflet but also the further duty of not having or including in the product any ingredient that would injure the purchaser when the
 
 *304
 
 hair dye was used as intended. Under the allegations of the petition, the plaintiff was entitled to introduce evidence tending to prove either implied warranty or negligence. There was no error prejudicial to the defendant in the action of the court in submitting the case to the jury on the issue of negligence.
 

 The judgment of the Court of Appeals will be reversed and the judgment of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Wbygandt, C. J., Matthias, Day, Zimmerman, Williams and G-orman, JJ., concur.