Stewart, J.
The trial court instructed a verdict for defendant upon the theory that one who sells food products, such as in the present case, impliedly warrants that the goods are of merchantable quality, whether the seller be the manufacturer or merely the broker; that the food product sold by defendant to plaintiff was of merchantable quality and was extensively sold until the United States Food and Drug Administration seized some of it because it did not have the right kind of package and the label did not sufficiently inform that other ingredients had to be added; that all that had to be done to make the food lawful for interstate commerce was to repackage and relabel it, which the manufacturer agreed to do at no cost to plaintiff; and that, therefore, there was no breach of implied warranty.
The Court of Appeals did not pass upon the correctness of the trial court’s instruction but based its affirmance largely upon the fourth paragraph of the syllabus of the case of McMurray v. Vaughn’s Seed Store, 117 Ohio St., 236, 157 N. E., 567, which paragraph reads:
“Where a dealer sells an article of merchandise in the original package as it comes from the manufacturer, and the customer buys it knowing there has been no inspection by the dealer, there is no implied *542 warranty, and, in the absence of an express warranty or representation, such dealer is not liable to the purchaser for damages caused by any deleterious substance in such merchandise the presence of which he had no knowledge.”
That paragraph of the syllabus was distinguished in Sicard v. Kremer, d. b. a. Roux Distributing Co., 133 Ohio St., 291, 13 N. E. (2d), 250, where the plaintiff was permitted to recover damages for personal injuries suffered as the result of using hair dye which she purchased in the original package from a retailer.
In distinguishing the McMurray case it was said in the opinion in the Sicard case, at page 300:
“The instant case is readily distinguishable from that case. There the product sold by the dealer was shipped direct to the buyer by the manufacturer, the dealer not having any opportunity for inspection. Moreover the article sold in bags was shredded cattle manure, a product not inherently dangerous as in the instant case. The defendant here was not. a mere retailer who sold the hair dye to the plaintiff in package form.”
The Court of Appeals in the present case said further that all the merchandise was shipped by the manufacturer and not by defendant, that the article was not inherently dangerous, and that, therefore, the present case is governed by the McMurray case and not by the Sicard case.
The Court of Appeals also cited Williston on Sales (1948 Ed.), Section 242, wherein it is stated that "where one dealer buys from another, each having
/¡supposedly equal skill and knowledge, no warranty is implied. ’ ’
Defendant in the present case strenuously insists that the judgment of the Court of Appeals should be affirmed for the reason that plaintiff has failed to prove *543 damages in that the government seizure and the later assertion of a trade-name infringement were not the proximate cause of plaintiff being left with undisposed of merchandise; and that the proximate cause was a 60-day guaranty of sale which plaintiff had given to his customers and under which they returned merchandise to him without regard to its condition or saleability.
Defendant had no knowledge of or part in plaintiff’s guaranty and it was not within the contemplation of the parties that plaintiff would have merchandise in his warehouse at the end of that period.
Defendant maintains further that since the merchandise sold to plaintiff was a perishable food product and there was no proof as to the date of the acquisition of any of the merchandise eventually left in plaintiff’s warehouse, there is no proof that plaintiff’s assertion of a breach of warranty was made within a reasonable time.
In view of the conclusion to which we have come, it is not necessary for us to pass upon the foregoing claim of defendant.
Plaintiff contends that the question of law presented to this court is “whether or not under the Ohio law, packaged merchandise that was so packed as to violate the United States laws, and bore a trade name' which the seller had no right to use, makes-the-merchandise unmerchantable within the purview of the Uniform Sales Act.”
Plaintiff maintains that defendant, by implication, warranted the goods to be merchantable, and that the evidence disclosed that by reason of the form of the package and the unauthorized use of the name, “So-Ezy, ’ ’ there had been a breach of such warranty to his damage.
Plaintiff maintains further that the fourth para *544 graph of the syllabus in the McMurray case, supra, is mere obiter and states a rule contrary to the overwhelming weight of authority.
We aré of the opinion that the decision in the present case may well rest upon grounds other than those stated by either of the lower courts.
The original package which plaintiff bought from defendant, who was not the manufacturer but simply a dealer or broker, was a container holding sufficient quantity of the “So-Ezy Pudding and Pie Mix” to make six pies or 36 puddings and retailed for 25 cents.
Before plaintiff undertook to sell this product he tested it for quality by using certain samples furnished by defendant.
Competition having arisen with other similar products which were marketed in smaller boxes, plaintiff suggested that defendant secure a similar package. A package of the same mix sold under the name, “Zip, ’ ’ was suggested to plaintiff but was declined by him because he had established in his territory a following for the product under the name, “So-Ezy.”
On or about January 16, 1946, defendant furnished plaintiff with six sample packages of “So-Ezy” in a small size, to retail at 10 cents a package. Subsequently, all sales of “So-Ezy” made by plaintiff were chiefly in this small package from which two pies or twelve puddings could be made.
It is obvious that the purchases by plaintiff of the product from defendant were made in reliance upon the samples submitted and there is no claim by plaintiff that any of the product sold varied from the sample.
The warranty of a vendor in sales made by sample is defined as follows in Section 8396, General Code:
*545 ‘ ‘ In the case of a contract to sell or a sale by sample—
“(a) There is an implied warranty that the bulk shall correspond with the sample in quality. •
“(b) There is an implied warranty that the buyer shall have a reasonable opportunity of comparing the bulk with the sample, except so far as otherwise provided in this chapter.
“(c) If the seller is a dealer in goods of that kind, there is an implied warranty that the goods shall be free from any defect, rendering them unmerchantable, which would not be apparent on reasonable examination of the sample.”
In the present case, plaintiff bought and sold in the neighborhood of $100,000 worth of the packages containing the mix. He not only examined the package and tested the contents, but the smaller package was furnished at his suggestion. The contents of the package were not deleterious or harmful and had been highly saleable.
Since defendant did not manufacture either the package or the mix, plaintiff over a period of approximately 18 months had the same opportunity as defendant for examination and knowledge of the package, its contents, the way the contents were packed, and any infringement of the trade name.
There is no claim that defendant had any knowledge which plaintiff did not have.
The question of merchantability where sale is by sample is discussed in 1 Williston on Sales (Rev. Ed.), 678, Section 257, as follows:
“As a general rule all the buyer is entitled to, in case of a sale or contract to sell by sample, is that the goods shall be like the sample. He has no right to have the goods merchantable if the sample which he has inspected is not. The reason upon which this *546 rule is based is identical with that which denies an implied warranty generally to a buyer who has inspected the goods which he buys.”
In Waite on Sales (2 Ed.), 220, it is stated:
“* *. * where the sale is of some specific chattel of which the seller is not the manufacturer or producer, and which the buyer has essentially the same opportunity to examine as does the seller, so that in effect the two are on an equal basis of knowledge, the courts as a general proposition tend toward denial of any implied warranty as to the characteristics of the chattel. ’ ’
In the present case defendant was a distributor of the goods in question and had assumed no responsibility or duties with regard to the manufacture, the design of the package or the adoption of the name. Both plaintiff and defendant were on an equal basis as to knowledge of the product, and that knowledge was not acquired upon the basis of a single sale but by dealing in hundreds of thousands of packages over approximately 18 months.
Under the circumstances of the present case, we are of the opinion that there was no implied warranty in the sale of the mix by defendant to plaintiff upon which plaintiff could rely.
Plaintiff relies strongly upon the case of Myers v. Malone & Hyde, 173 F. (2d), 291. However, in that case there were two purchases of merchandise by description, which merchandise the buyer had not inspected, and the defects for which the government seized the merchandise could not have been discovered without opening the cans of merchandise, which consisted of tomatoes, and testing the contents.
We are of the opinion that the legal rights and obligations governing the Myers case were totally dif *547 ferent from those with which the present case is concerned.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias and Hart, JJ., concur.
Taft, J., concurs in the judgment. .