**Pandora ANTON et al., Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 74–183.**

United States District Court, S. D. Ohio, E. D.

July 3, 1975.

Harold E. Gottlieb, Zanesville, Ohio, for plaintiffs.

Edgar A. Strause, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This matter is before the Court upon defendant Ford Motor Company's mo-

tion for summary judgment. The Court has the benefit of the briefs of the parties and of an agreed statement of facts. The questions presented are whether Ohio law, which the parties agree governs in this diversity action, imposes a duty of safe design upon the manufacturers of automobiles, and, if so, whether the complaint sufficiently alleges a breach of such a duty. These questions have not been answered by the Supreme Court of Ohio in any opinion cited to or discovered by this Court, so that this case thrusts upon the Court "the hazards of prophecy"[1] as to how Ohio's highest bench would decide the same issues. The problem is compounded by the fact that the questions presented herein have of late been hotly debated in the courts and by the commentators.[2] It is appropriate at the outset of this opinion to set out Dean Prosser's comment:

> The current lively controversy over automobile design is over whether the maker is under a duty to make the car 'crashworthy,' or in other words, to prevent injury from what has been called the 'second collision,' when the plaintiff comes in contact with some part of the automobile after the crash. The greater number of decisions have denied any duty to protect against the consequences of collisions, on the rather specious ground that collision is not the intended use of the car, but is an abnormal use which relieves the maker of responsibility. It is, however, clearly a foreseeable danger arising out of the intended use; and it cannot be expected that this reasoning will continue to hold. In a small number of late decisions, the duty has been recognized, and the driver or passenger has been allowed to recover.

W. Prosser, *The Law of Torts* § 96, at 646 (4th ed. 1971) (footnotes omitted).

Defendant Ford Motor Company may prevail on its motion for summary judgment only if there exists no dispute concerning a material issue of fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Houk v. Ross*, 34 Ohio St.2d 77, 296 N.E.2d 266 (1973).

The facts stipulated by the parties may be rather briefly stated. On April 29, 1972, plaintiff Pandora Anton was riding in the right rear seat of a 1972 three-door Ford "Pinto Runabout" automobile driven by her brother-in-law, Jack Dodrill. Also in the car were Dodrill's wife, in the front right seat, and his daughter, in the left rear seat. The Pinto, compact or sub-compact in size, was purchased new from a Ford dealership by Mr. Dodrill in November of 1971. It had been driven approximately 7,000 or 8,000 miles at the time the collision occurred. The vehicle was proceeding in an easterly direction on West Main Street in Hebron, Ohio, at a speed of from 35–40 miles per hour, when it was struck from the rear by a 1969 Ford "LTD" station wagon which was proceeding in the same direction at a speed in excess of 75 miles per hour. The impact caused the rear window frame and glass to pop out of the vehicle, and it ruptured the gasoline tank causing gasoline to be spewed upon the highway. Pandora Anton was thrown out of the Pinto through the rear window opening and came to rest on the pavement, where she sustained burn injuries from the fuel which had escaped the Pinto and ignited. The other occupants of the Pinto did not sustain burn injuries.

The parties also stipulate that for purposes of this motion for summary judgment "the Court may assume as part of said statement of facts proof in

1. *Nichols v. Eli Lilly & Co.*, 501 F.2d 392, 393 (10th Cir. 1974).

2. Pertinent court decisions are discussed *infra*. Numerous law review articles are cited in *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737, 744 n. 3 (1974) and *Anno.*, 42 A.L.R.3d 560, 564 (1972).

behalf of plaintiff, which is disputed by defendant, that some other design involving the gas tank and/or rear bumper would have prevented rupture of the gas tank of the 1972 Pinto (Dodrill car) as a result of a rear-end collision causing an impacting force equivalent to that to which the Dodrill car was subjected in connection with the accident described herein and asserting the inadequacy of the design of the gas tank and/or rear bumper." The stipulation of facts also includes the statement, "The material specifications, manufacturing process and general positioning of the fuel tank, as well as the positioning, size and manner of mounting the rear bumper of the 1972 Pinto involved herein was the same as used by the Ford Motor Company in the construction and manufacture of all 1972 Pinto models, and similar or comparable to fuel tanks and rear bumpers on other car models of the same relative size (compact and sub-compact) manufactured by other American manufacturers, such as Vega, Gremlin, Valiant, Dart and Chevelle."

## I. PRODUCTS LIABILITY DECISIONS OF THE SUPREME COURT OF OHIO

What began at the turn of the century as an "assault upon the citadel"[3] of privity has developed into a national trend of imposing liability upon the manufacturers of defective products intended for consumer purchases "to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves."[4] A review of the decisions of the Supreme Court of Ohio reveals that Ohio has been at the forefront of those states which have shaped the format of modern products liability law.

*Sicard v. Kremer*, 133 Ohio St. 291, 13 N.E.2d 250 (1938) was an action brought by a cosmetician against the distributor of a hair dye which allegedly contained a poisonous substance which caused the plaintiff to develop dermatitis. The plaintiff alleged breach of contract warranty and negligence. The Court without dissent upheld the judgment against the distributor, although it observed at the outset, "Whether there was privity of contract between plaintiff and defendant does not clearly appear." 133 Ohio St. at 293, 13 N.E.2d at 251. The Court stated the law of Ohio to be as follows in the case of a sale of goods:

> The buyer of a product not only has a contractual right that the product will be as warranted, express or implied, but the further common-law right not to be harmed or injured by some unknown ingredient or defect when the product is used in the manner intended.

> \* \* \* \* \* \*

> Even though there be no purchase price, one has no right to bestow an article containing a hidden danger on another as a gift, knowing that the use thereof by such other will cause the latter injury. But where there is consideration, the responsibility to refrain from including in any such article any hidden danger is very much greater. There is the obligation that the goods will be fit for the particular purpose intended and the further duty to refrain from including therein any hidden danger unknown to the buyer. Failure to meet the first obligation is

3. Prosser, *The Assault Upon the Citadel*, 69 Yale L.J. 1099 (1960); Prosser, *The Fall of the Citadel*, 50 Minn.L.Rev. 791 (1966). See *MacPherson v. Buick Motor Company*, 217 N.Y. 382, 111 N.E. 1050 (1916) (Cardozo, J.).

4. *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962) (Traynor, J.). See generally *Anno.*, 33 A.L.R.3d 415, 419-20 (1970); Keeton, *Products Liability—The Nature and Extent of Strict Liability*, 1964 U.Ill.L.F. 693 (1964); Restatement (Second) of Torts § 402A, Comment *a* through *c*, at 348-50 (1965); *Note*, 30 Ohio St.L.J. 551 (1969).

a breach of warranty, express or implied; failure to meet the second duty is negligence.

\* \* \* \* \* \*

Where the product is manufactured and sold with the knowledge that it will come into contact with the user or operator, the manufacturer or distributor has not only the obligation that the product will be according to the contract, express or implied, but the added common-law duty of not placing or having anything in the product that will injure the buyer when used as intended.

133 Ohio St. at 293–94, 298, 13 N.E.2d at 252. The Court cast a liberal eye upon the kinds of damages which might be recovered in such an action, holding that "all damages, whether to the person or business, proximately resulting from such injury, are provable," including those arising from "pain, mental anguish, inability to perform her own household work, or inability properly to carry on her business." 133 Ohio St. at 299, 13 N.E.2d at 254. The Court went on to reject the defendant's contention that the manufacturer should be solely liable. 133 Ohio St. at 300–301, 13 N.E.2d 250. *Sicard* is an early case in the developing law of products liability, and can certainly be distinguished from the modern doctrine of strict liability in tort;[5] nevertheless, with its imposition of duty and its choice of language it stands as a remarkable harbinger of subsequent decisions of the Court.

Twenty years after *Sicard* the Supreme Court of Ohio handed down a products liability decision "which immediately upon its rendition was recognized as having landmark status."

*Anno*, 75 A.L.R.2d 39, 84 (1961). The case was *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612, 75 A.L.R.2d 103 (1958). The Supreme Court of Ohio was later to make the following observation concerning *Toni:*

Ohio has already contributed one landmark case—*Rogers v. Toni Permanent Co.*, supra, that is respected and followed widely in the field of products liability. It was an instance of Ohio leadership in a mass of difficult legal questions. The principle laid down in *Toni* has been a strong arm of the law in its development to keep pace with the remarkable economic growth of our country during the past one-half century.

*Inglis v. American Motors Corp.*, 3 Ohio St.2d 132, 141, 209 N.E.2d 583, 588 (1965).

The plaintiff in *Toni* alleged that she had her mother give a permanent wave to her (plaintiff's) hair using one of the defendant's home permanent kits. The result of the use of the kit, which was labeled "Very Gentle," was allegedly that plaintiff's hair was caused "to assume a cotton-like texture and become gummy; that her hair refused to dry; and that when the curlers furnished by defendant were attempted to be removed, her hair fell off to within one-half inch of her scalp." 167 Ohio St. at 244, 147 N.E.2d at 613. The holding of *Toni* was that a consumer could sue the manufacturer of a product for breach of express warranties arising from published advertisements, although no privity of contract existed between the consumer and the manufacturer. "The warranties made by the manufacturer in his advertise-

5. The Court in *Sicard* was careful to label the hair dye with which it was concerned "an article inherently dangerous," 133 Ohio St. at 293, 298, 13 N.E.2d 250; the case has been cited as one falling within an "inherently dangerous product" exception to the privity rule. *Thrash v. U-Drive-It Co.*, 158 Ohio St. 465, 469, 110 N.E.2d 419, 421 (1953). See also 48 O.Jur.2d "Sales" § 157, at 323–26 (1966). The Court in *Sicard*,

however, played down the importance of the "inherently dangerous" rationale, stating, "While the instant case concerns a product inherently dangerous, the principle involving the breach of a common-law right in connection with a contract has been extended in recent years." 133 Ohio St. at 303, 13 N.E.2d at 255 (citing and quoting from *MacPherson v. Buick Motor Company, supra* n. 3).

ments and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious." 167 Ohio St. at 249, 147 N.E.2d at 615. The attitude evinced by the Supreme Court of Ohio concerning the development of products liability law in the state is demonstrated by the following excerpts from *Toni*:

> Occasions may arise when it is fitting and wholesome to discard legal concepts of the past to meet new conditions and practices of our changing and progressing civilization.
>
> \* \* \* \* \* \*
>
> We are fully aware that the position outlined is opposed to the present weight of authority and may conflict with previous decisions of this court. However we consider it a reasonable and logical approach today in keeping with the modern methods of doing business.

167 Ohio St. at 248, 249, 147 N.E.2d at 615. *Toni* was one of the landmark cases relied upon by Justice Traynor four years later in drawing his famous conclusion that modern products liability "is not one governed by the law of contract warranties but by the law of strict liability in tort." *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962).

In *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185, the Supreme Court of Ohio addressed products liability questions. Mr. Lonzrick was an employee of a construction firm who was injured when certain steel roof joists manufactured and sold by Republic Steel collapsed at a construction site and fell upon him. Lonzrick's petition alleged simply that Republic Steel "impliedly warranted that said roof joists were of good and merchantable quality," which warranty, it was alleged, defend-

ant breached. 6 Ohio St.2d at 228, 218 N.E.2d at 186. The Court found that the petition did not sufficiently allege either an action in contract or in simple tort. 6 Ohio St.2d at 230, 218 N.E.2d 185. Nevertheless, the trial court had erred in dismissing the action:

> It is, then, settled law in this state, *Toni, supra*, and *Inglis* [*v. American Motors Corp.*, 3 Ohio St.2d 132, 209 N.E.2d 583 (1965)], that there can be an action in tort, based upon breach of warranty, and no contractual relation between the plaintiff and the defendant is required.
>
> \* \* \* \* \* \*
>
> The rulings in *Toni* and *Inglis* were sound in allowing recovery to the plaintiff in a tort action based upon an express warranty.
>
> The fact that the plaintiff saw the advertisement is a sound basis for recovery, *but the fact that he did not read an advertisement is not a sound basis for denying recovery*.
>
> \* \* \* \* \* \*
>
> For the plaintiff to recover, he must prove, by the required degree of proof, that the joists were defective, that they were defective at the time the manufacturers sold them, that the defect caused them to collapse while they were being used for their ordinary intended purpose, that the defect was the direct and proximate cause of the plaintiff's injury, and that the plaintiff's presence was in a place which the defendant could reasonably anticipate.
>
> \* \* \* \* \* \*
>
> Defendant has available the opportunity to offer evidence in defense of each of these necessary elements of the plaintiff's case, and also has available the defense of assumption of risk and intervening cause.

6 Ohio St.2d at 236, 237, 218 N.E.2d at 192. (Emphasis in original.) The Court went on to cite numerous authorities supporting the doctrine of strict liability in tort, such as Justice Traynor's

opinion in *Greenman v. Yuba Power Products, Inc., supra,* and Section 402A of the Restatement (Second) of Torts. 6 Ohio St.2d at 239, 218 N.E.2d 185. With the Supreme Court observing that "[i]n Ohio the law in the field of products liability has had a slow, orderly and evolutionary development," 6 Ohio St.2d at 239, 218 N.E.2d at 194. Ohio thereby adopted, in principle if not in name,[6] the doctrine of strict liability in tort.

■ Other than those cases discussed above, and one case which established the statute of limitations in strict liability cases, see *U.S. Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.,* 21 Ohio St.2d 244, 257 N.E.2d 380 (1970), the Supreme Court of Ohio has not to the knowledge of this Court further defined the scope of strict liability in tort under Ohio law. Remembering, then, the leadership role which the Supreme Court of Ohio has assumed in the field of products liability in the past, this Court turns to decisions of courts other than the Supreme Court of Ohio for assistance in resolving the question of what duty under Ohio law an automobile manufacturer owes a passenger riding in one of its products.

## II. A DUTY OF "CRASH-WORTHINESS"?

As was noted at the outset of this opinion, there has developed in this country in recent years a considerable split of judicial authority concerning whether automobile manufacturers have a duty to prevent or minimize so-called "enhanced" or "second collision" injuries suffered by the occupants of motor vehicles involved in collisions. The question has been phrased by one court as whether "automobile manufacturers can be held strictly liable for defects in design which do not cause highway collisions but instead exacerbate injuries therefrom." *Turcotte v. Ford Motor Company,* 494 F.2d 173, 180 (1st Cir. 1974). The two cases most frequently cited as symbolizing the split of authority on this question are *Evans v. General Motors Corporation,* 359 F.2d 822 (7th Cir.), *cert. denied* 385 U.S. 836, 87 S.Ct.

---

6. The phrase "strict liability" appears, to this Court's knowledge, in only one opinion of the Ohio Supreme Court. See *State Auto Mutual Ins. Co. v. Chrysler Corp.,* 36 Ohio St.2d 151, 156, 161, 304 N.E.2d 891, 894, 898 (1973). Cf. *Rogers v. Toni Home Permanent Co.,* 167 Ohio St. 244, 249, 147 N.E.2d 612, 615 (1958), where the Court used the term "strict accountability." In *Iacono v. Anderson Concrete Corp.,* 42 Ohio St.2d 88, 326 N.E.2d 267 (1975), in which the Court held that the cause of action announced in *Lonzrick* is applicable to injuries to property as well as to the person, the Court reverted to its previous use of the "warranty in tort" label: "This court has recognized that, historically, an action grounded on breach of warranty sounded in tort rather than contract. It is a mistaken notion that use of the term 'warranty' always carried the implication of a contractual relationship." 42 Ohio St.2d at 91 n. 1, 326 N.E.2d at 269 (*citing Toni*). Since in *Lonzrick* the Court cited *Greenman* and other strict liability cases, as well as § 402A of the Restatement (Second) of Torts, and since it adopted the essential elements of § 402A of the restatement as the elements of Ohio's "implied warranty in tort" cause of action, the choice of terminology by the Court does not disguise the fact that Ohio is a strict liability state. Comment *m* to § 402A of the restatement provides, in part, as follows:

> A number of courts, seeking a theoretical basis for the liability, have resorted to a 'warranty,' either running with the goods sold . . . or made directly to the consumer without contract . . . . There is nothing in [§ 402A] which would prevent any court from treating the rule stated as a matter of 'warranty' to the user or consumer. But if this is done, it should be recognized and understood that the 'warranty' is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

One Ohio intermediate appellate court has observed, "The term 'strict liability in tort' used in the Restatement of Torts 2d and 'implied warranty in tort' used in Ohio are essentially interchangeable." *Avenell v. Westinghouse Electric Corp.,* 41 Ohio App. 2d 150, 156 n. 5, 324 N.E.2d 583, 588 (1974). See also *Note,* 30 Ohio St.L.J. 551, 556 (1969).

83, 17 L.Ed.2d 70 (1966) (applying Indiana law and finding no duty) and *Larsen v. General Motors Corporation,* 391 F.2d 495 (8th Cir. 1968) (applying Michigan law and finding a duty).

In *Evans* a divided panel of the United States Court of Appeals for the Seventh Circuit affirmed the district court's dismissal of a complaint against General Motors in a diversity action. The complaint alleged three separate counts: negligence, implied contractual warranty and strict liability in tort. 359 F.2d at 823. Plaintiff's decedent was killed when the station wagon which he was driving was struck broadside in an intersection by another vehicle. Plaintiff's theory was that General Motors had breached a legal duty owed to the decedent by utilizing as the frame of the death vehicle an "X" frame rather than a perimeter frame. See the illustrated advertisement of a competitor of General Motors, reproduced at 359 F.2d at 823. Judge Knoch, writing for the majority, noted that it was not alleged that the "X" frame actually caused the collision which brought about the death of the decedent. He also observed that the plaintiff did not "contend that the decedent could not have been killed or injured in this same collision had the 1961 Chevrolet station wagon been designed with a perimeter frame." 359 F.2d at 824. He then went on:

A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law.

\*     \*     \*     \*     \*     \*

The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such colli-

sions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons.

\*     \*     \*     \*     \*     \*

It is not alleged that General Motors expressly warranted its automobile to have side rails or to be capable of protecting a driver in broadside collisions; nor can such warranty be implied from the allegations in plaintiff's amended complaint.

359 F.2d at 824, 825 (citations omitted).

In his dissent in *Evans,* Judge Kiley reasoned that recent decisions applying Indiana products liability law established a "direction of the law" which "leads to greater responsibility of manufacturers in designing, testing and manufacturing products, with a purpose of giving reasonable protection against harm to purchasers in the use of the products for their intended purposes." 359 F.2d at 826. He went on as follows:

In my view, General Motors' duty was to use such care in designing its automobiles that reasonable protection is given purchasers against death and injury from accidents which are expected and foreseeable yet unavoidable by the purchaser despite careful use See Restatement (Second), Torts § 395, especially comments *j* and *k* to this section, and § 398 (1965).

\*     \*     \*     \*     \*     \*

The trier of fact in each case, where prima facie showing is made, must decide whether the design protection is reasonable, depending on the character of the car involved and other relevant considerations.

\*     \*     \*     \*     \*     \*

I recognize that safety standards for automobiles would normally be a legislative matter. . . . But the possibility of future adequate legislative standards does not remove the necessity of presently deciding whether plaintiff should or should not have an

opportunity to prove the allegations made in the complaint.

359 F.2d at 827, 828 (footnote omitted). Judge Kiley also stated, "While the possible negligence of the plaintiff's decedent, or the driver of the other car, may present an issue of causation, this should not eliminate from the case the duty of the automobile manufacturer." 359 F.2d at 827 n.3.

■ In *Larsen, supra,* the United States Court of Appeals for the Eighth Circuit refused to follow *Evans* and like cases. The Court declined to base its decision on strict products liability principles, since it was unsure whether the Michigan Supreme Court would adopt strict liability in tort as the law of Michigan. See 391 F.2d at 503 n.5 and at 506. It based its decision upon simple negligence principles,[7] and it found that General Motors had under Michigan law a duty of reasonably safe design to protect vehicle occupants from enhanced injuries:

> We think the 'intended use' construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be

liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, are all foreseeable. . .

> We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats in the water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable.

> \*    \*    \*    \*    \*    \*

7. Whether a court seizes upon traditional negligence principles or the doctrine of strict liability in tort in finding a duty to design crashworthy vehicles should have little impact upon the resultant legal duty of the manufacturer, because under strict liability in tort principles the question whether a defect in fact exists turns upon whether the product as sold is "unreasonably dangerous to the user or consumer or to his property." Restatement (Second) of Torts § 402A(1). The choice may affect the difficulty which the plaintiff will encounter in proving his case; see *Note,* 52 Cornell L.Q. 444, 458 (1967) (footnotes omitted):

> A defective product has variously been referred to as one not 'reasonably fit for the ordinary purposes for which such articles are sold and used' or one that is unreasonably dangerous to the user or his property. The criteria for determining if a product is unreasonably dangerous are

similar to those which are significant in determining whether particular conduct is negligent, but they also illustrate the essential difference between negligence and strict liability concepts. Negligence is concerned with the reasonableness of the manufacturer's conduct; strict liability ignores his conduct and emphasizes the safety of the product itself, given prudent use.

See also *Chestnut v. Ford Motor Company,* 445 F.2d 967, 968–69 (4th Cir. 1971). But see *Brandenburger v. Toyota Motor Sales,* 513 P.2d 268 (Mont.1973), where the Supreme Court of Montana adopted strict liability in tort as the law of the state and in the same opinion applied the *Larsen* doctrine to a "second collision" set of facts, even though the Court had a year earlier adopted the Evans rationale in an enhanced injury negligence action, *Ford v. Rupple,* 504 P.2d 686 (Mont.1972).

This duty of reasonable care in design rests on common law negligence . . . .. The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crashproof vehicle be designed under the present state of the art, there are many commonsense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.

391 F.2d at 502, 503 (footnotes omitted). The *Larsen* court also declined to accept General Motors' argument that the National Traffic and Motor Vehicle Safety Act of 1966, now codified as 15 U.S.C. § 1381 *et seq.*, should control as regards the automobile manufacturer's duty of safe design; the court noted that 15 U.S.C. § 1397(c) [8] "expressly negatives any intention of Congress to acquire exclusive jurisdiction in this field and leaves the common law liability intact." 391 F.2d at 506.

The opinions in *Evans* and *Larsen* amply draw the lines of the enhanced injury dispute. Cases which follow *Evans* include *McClung v. Ford Motor Company*, 472 F.2d 240 (4th Cir. 1973) (applying West Virginia law); *Alexander v. Seaboard Air Line Railroad Company*, 346 F.Supp. 320 (W.D.N.C.1971) (applying North Carolina law); *Ford Motor Company v. Simpson*, 233 So.2d 797 (Miss.1970); *Shumard v. General Motors Corporation*, 270 F.Supp. 311 (S.D. Ohio 1967) (applying Ohio law) (dis-

cussed *infra*); *Willis v. Chrysler Corporation*, 264 F.Supp. 1010 (S.D.Tex.1967) (applying Texas law).[9]

Although recent judicial trends are of course difficult to discern, it is fair to observe that several courts have of late adopted the holding of *Larsen*. The cases include *Turcotte v. Ford Motor Company*, 494 F.2d 173 (1st Cir. 1974) (applying Rhode Island law); *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737 (1974); *Dreisonstok v. Volkswagenwerk, A. G.*, 489 F.2d 1066 (4th Cir. 1974) (applying Virginia law); *Bolm v. Triumph Corporation*, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E. 2d 769 (1973); *May v. Portland Jeep, Inc.*, 265 Or. 307, 509 P.2d 24 (Oregon 1973); *Brandenburger v. Toyota Motor Sales*, 523 P.2d 268 (Mont.1973); *Engberg v. Ford Motor Company*, 205 N.W. 2d 104 (S.D.1973); *Bremier v. Volkswagen of America, Inc.*, 340 F.Supp. 949 (D.D.C.1972) (applying Maryland law); *Badorek v. General Motors Corporation*, 11 Cal.App.3d 902, 90 Cal.Rptr. 305 (1970); *Grundmanis v. British Motor Corporation*, 308 F.Supp. 303 (E.D. Wis.1970) (applying Wisconsin law); *Walker v. International Harvester Company*, 294 F.Supp. 1095 (W.D.Okla.1969) (applying Oklahoma law); *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173 (1969); *Dyson v. General Motors Corporation*, 298 F.Supp. 1064 (E.D.Pa. 1969) (applying Pennsylvania law).

*Dreisonstok v. Volkswagenwerk, A. G.*, 489 F.2d 1066 (4th Cir. 1974) is a good example of proper application of *Larsen* principles to a given set of facts. *Dreisonstok* refutes the frequent [10] insist-

---

8. The section provides: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law."

9. See also Hoenig and Werber, *Automobile "Crashworthiness": An Untenable Doctrine*, 20 Cleveland St.L.Rev. 578, 1971 Insurance L.J. 583 (1971), which includes a discussion of some of *Evans'* unreported and unofficially reported progeny.

10. See *Note*, 118 U.Pa.L.Rev. 299, 300 (1969) (footnotes omitted):

The courts, however, have occasionally lost sight of these basic negligence principles when dealing with the question whether to impose a duty of safe design on the automobile manufacturers; this has caused considerable concern among commentators. The loss of perspective has been prompted primarily by shrewd legal manipulation on the part of the industry's counsel. These lawyers have managed to

ance by automobile manufacturers that the *Larsen* doctrine imposes upon them an impossible duty of care. In *Dreisonstok*, the plaintiff had been injured when a Volkswagen microbus collided with a telephone pole. The district court, applying *Larsen* principles pursuant to Virginia law, found that the manufacturer was liable for failing to design into the vehicle "sufficient energy-absorbing materials or devices or 'crush space,' if you will, so that at 40 miles an hour the integrity of the passenger compartment would not be violated." 489 F.2d at 1069–70. Noting that the "key phrase in the statement of the *Larsen* rule is *'unreasonable risk* of injury in the event of collision', not the foreseeability of collision," 489 F.2d at 1071 (emphasis in original), the United States Court of Appeals for the Fourth Circuit reversed and ordered that judgment be entered for the manufacturer. The Court noted several principles that apply in determining whether an unreasonable risk of injury exists in the design of an automobile. See 489 F.2d at 1071–76. Specifically, the Court found that "in determining whether a vehicle has been negligently designed so far as safety is concerned, the special purpose and character of the particular type of vehicle must be considered." 489 F.2d at 1076. In a microbus, the

> distance between the front and the passenger compartment is minified in

order to provide additional cargo or passenger space just as the convertible is designed to provide openness. It is entirely impermissible to predicate a conclusion of negligent design simply because a vehicle, having a distinctive purpose, such as a microbus, does not conform to the design of another type of vehicle, such as a passenger car, having a different nature and utility.

489 F.2d at 1075. The *Larsen* doctrine, then, does not make the automobile manufacturer an insurer against all enhanced injuries suffered in vehicular collisions. The duty of the manufacturer is not to design a car which creates unreasonable risks of enhanced injury, and the duty in any particular case varies with the type of vehicle involved in the collision. See also *Dyson v. General Motors Corporation*, 298 F.Supp. 1064, 1073 (E.D.Pa.1969).

## III. CONCLUSION

No decision of an Ohio intermediate appellate court which in fact addresses the precise questions before this Court has been cited to or discovered by the Court. With perhaps one or two exceptions,[11] the only case pertaining to the automobile manufacturer's design duty in Ohio which has not already been discussed is *Shumard v. General Motors Corporation*, 270 F.Supp. 311 (S.D.Ohio 1967). *Shumard* is frequently cited as a case supportive of the *Evans* doctrine.[12]

---

persuade the courts that a plaintiff seeking recovery based on faulty design is in effect contending that the manufacturer is under a duty to design and construct a crashproof or foolproof car . . . ."
See also *Larsen, supra*, 391 F.2d at 502: "We do agree that under the present state of the act an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle . . . ." *Cf. Shumard v. General Motors Corporation*, 270 F.Supp. 311 (S.D.Ohio 1967), discussed *infra*.

11. See, *e. g., Gossett v. Chrysler Corporation*, 359 F.2d 84, 87 (6th Cir. 1966) (citation omitted) :
> It is conceded that the law of Ohio is applicable to the facts of this case since the accident happened in Ohio. We do not find any cases in Ohio which specifically

define the duties of a manufacturer relative to product-design. The general rule may be stated as follows: It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. This duty includes a duty to design the product so that it will fairly meet any emergency of use which can reasonably be anticipated. The manufacturer is not an insurer that his product is, from a design viewpoint, incapable of producing injury.

*Gossett* was not an enhanced injury case.

12. See, *e. g., Larsen v. General Motors Corporation*, 391 F.2d 495, 498 (8th Cir. 1968) ; *Alexander v. Seaboard Air Line Railroad*

*Shumard* was decided a year before the Eighth Circuit rendered its decision in *Larsen*. The controversy surrounding the relative merits of *Evans* and *Larsen* has therefore developed since *Shumard* was decided. The Court now has the benefit of many court decisions and commentaries concerning defective design which were unavailable when *Shumard* was decided in 1967.

■ Considering both the trends in Ohio products liability law, as those are reflected in decisions of the Supreme Court of Ohio, and the substance of the *Evans* and *Larsen* dichotomy, I must conclude that if the Supreme Court of Ohio were to decide the question today, it would follow, substantially, the *Larsen* rule. Properly read, *Larsen* and its second-collision progeny impose upon the automobile manufacturer only the duty not to design an unreasonably dangerous product. In each case, the particular facts concerning the type of vehicle and the type of collision involved must be applied to determine whether a breach of this duty is alleged.

■■ In the instant case, a compact or sub-compact car is involved. "[I]n determining whether a vehicle has been negligently designed so far as safety is concerned, the special purpose and character of the particular type of vehicle must be considered." *Dreisonstok v. Volkswagen, A. G.*, 489 F.2d 1066, 1076 (4th Cir. 1974). See also *Dyson v. General Motors Corp.*, 298 F.Supp. 1064, 1073 (E.D.Pa.1969). But the parties to this action have stipulated for purposes of this motion for summary judgment

that plaintiff has proof "that some other design involving the gas tank and/or rear bumper would have prevented rupture of the gas tank of the 1972 Pinto (Dodrill car) as a result of a rear-end collision causing an impacting force equivalent to that to which the Dodrill car was subjected . . . ." Proof of such a nature is sufficient to raise a question of fact concerning whether the vehicle in question. was unreasonably dangerous in design; factors such as the particular force of impact involved and the customary design techniques utilized by the industry in similar automobile models are relevant to the issue of whether a duty was breached, but are not particularly helpful on a motion for summary judgment.

■■ It should not be assumed that the burden of the plaintiff in cases such as this is easily met. The plaintiff will have to show, by a preponderance of the evidence, at least (1) that the vehicle was in fact defectively designed, and (2) that the defect in design in fact enhanced her injuries. The defendant has the Fed.R.Civ.P. 50(a) and (b) devices available to it at trial should plaintiff fail to present the necessary evidence. The Court finds only that the duty alleged does exist under Ohio law; the defendant "has available the opportunity to offer evidence in defense of [the] necessary elements of the plaintiff's case, and also has available the defense of assumption of risk and intervening cause." *Lonzrick v. Republic Steel Corporation*, 6 Ohio St.2d 227, 237, 218 N. E.2d 185, 193 (1966).

The motion is denied.

*Company*, 346 F.Supp. 320, 325 (W.D.N.C. 1971). See also *Annot.*, 42 A.L.R.3d 560,

568 (1972) ; *Hoenig and Werber, supra* n. 9, 1971 Insurance L.J. at 586 n. 8.