Charles H. **SHUMARD,** Administrator of the Estate of Donald W. Shumard, Deceased, Plaintiff,

v.

**GENERAL MOTORS CORPORATION,** Defendant.

Civ. A. No. 7904.

United States District Court
S. D. Ohio, E. D.

Feb. 28, 1967.

Harry M. Philo, Detroit, Mich., Joseph J. Bruzzese, Samuel A. Corabi, Steubenville, Ohio, for plaintiff.

John C. Elam, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendant.

## OPINION AND ENTRY

WEINMAN, Chief Judge.

This action was filed under the Ohio Wrongful Death Act as the result of the death of his decedent on January 8, 1965. The complaint states that the plaintiff's decedent was in an automobile collision with another vehicle and was killed while in a 1962 Corvair automobile which erupted into flames and killed plaintiff's decedent.

The complaint sets forth four causes of action, to-wit, (1) Negligence, (2) Strict Liability in Tort, (3) Breach of Express and Implied Warranties, and (4) Wanton and Wilful Misconduct.

The singular issue presented by the complaint is whether an automobile manufacturer has a duty to design its automobiles to be fireproof and prevent injury to occupants when such automobiles are in collision with other objects and, in this instance, with another vehicle.

An automobile manufacturer cannot construct a fireproof vehicle unless it forsakes the use of any and all combustible materials. The impracticality and unreasonableness of this suggestion is obvious. No duty exists to make an automobile fireproof, nor does a manufacturer have to make a product which is "accident-proof" or "foolproof". Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Blissenbach v. Yanko, 90 Ohio App. 557, 107 N.E.2d 409 (1951).

The issue of negligent automobile design was raised in the recent case, Evans v. General Motors Corporation, 359 F.2d

822 (7th Cir., 1966). This suit was a wrongful death action brought by the personal representative of the decedent's estate. Decedent was killed when his Chevrolet automobile was struck broadside by another vehicle. The plaintiff contended that General Motors was negligent in designing an automobile with an "X" frame rather than a perimeter frame since the "X" frame allegedly permitted the left side of decedent's automobile to collapse against him, inflicting fatal injuries when the automobile was struck broadside. As in the instant case, on this same theory of improper design, the plaintiff made claims under implied warranty and strict liability in tort.

The District Court in the *Evans* case dismissed the plaintiff's amended complaint. In affirming the trial court's decision, the United States Seventh Circuit Court of Appeals held that a manufacturer is not under a duty to make his automobile "accident-proof" or "foolproof" nor must he render the vehicle "more" safe where the danger to be avoided is obvious to all. In affirming the dismissal of the amended complaint, the Court of Appeals for the Seventh Circuit stated at page 824:

"The major question before us is the nature of the duty which an automobile manufacturer owes to users of its product. This presents an issue of law for the Court. * * *

"The defendant concedes that it had a duty to design its automobile to be reasonably fit for the purpose for which it was made, without hiding defects which would make it dangerous to persons so using it."

■ The Court also stated that it was not a judicial function "to require manufacturers to construct automobiles in which it would be safe to collide * * *". Imposition of such a requirement on automobile manufacturers "would be a legislative function, not an aspect of judicial interpretation of existing law". The extent of the manufacturer's duty in designing an auto frame is to insure that it is reasonably fit for its *intended purpose*.

■ The issue of alleged negligent design in the instant case is identical to that before the court in the *Evans* case. The sole distinction is that a different aspect of automobile design has been alleged as negligence. The duty of a manufacturer in the design of automobiles does not include designing a "fireproof" automobile or an automobile in which passengers are guaranteed to be safe from fire. A manufacturer has no duty to design an automobile that will not catch fire under any circumstances. The manufacturer's duty is to design an automobile which will not present a fire hazard during its normal intended operation.

■ As observed by the court in the *Evans* case, the question of duty is an issue of law for the court. In Kahn v. Chrysler Corp., 221 F.Supp. 677, 678 (S.D.Tex.,1963), the court said:

"However, who is to determine if a duty exists? Is this a matter of law or a disputed fact question itself? Certainly, there is disagreement in the instant case over whether or not the defendant had a duty to so design his vehicle that an accident like that under consideration could never happen. The very essence of plaintiff's complaint is that the defendant owed to the plaintiff a duty to manufacture an automobile with which it was safe to collide. But this is not sufficient to constitute a disputed fact issue, for this is a question of law to be determined by the court. Whether or not a legal duty exists on a given state of facts and circumstances so as to give rise to actionable negligence or breach thereof, as well as the nature and extent of the duty, if any, is always essentially a question of law."

In the Kahn case, the plaintiff, a minor, drove his bicycle into the rear of a Dodge automobile, striking his temple against a sharp and protruding fin on the rear of the vehicle. The claim was for negligent design against

the manufacturer, and that defendant knew that such fins would be capable of causing such injuries. The court granted summary judgment for defendant, stating that the duty of care is limited to the "normal use" and "ordinary purpose" of a vehicle.

■ The purpose for which a product is manufactured has reference to its normal and proper use and not to *any* use.

■ These cases conclusively demonstrate that an automobile is not made for the purpose of striking or being struck by other vehicles or objects and that the duty of an automobile manufacturer does not include the duty to design and construct an automobile which will insure the occupants against injury no matter how it may be misused or bludgeoned by outside forces.

■ The second allegation of negligence is that General Motors failed to *warn* plaintiff's decedent of the "additional fire hazard of the Corvair automobile over conventional American automobiles of the same vintage." This allegation, of course, merely states a conclusion regarding alleged comparative fire hazards of American automobiles. It adds nothing to the basic claim that the defendant had a duty to manufacture a fireproof car. The basic question is the same in both situations, to-wit, is there a duty to construct an automobile so as to render it immune to the natural consequences of collision with other motor vehicles or objects? The answer clearly is "no". There can be no duty to design, to prevent, or to warn of dangers arising in the course of unintended use of the car.

■ It is the duty of the manufacturer to warn purchasers of the situations and circumstances in which its products may present a danger in the course of intended use. If manufacturers of automobiles are to be made liable for failing to prevent any injury from collisions, regardless of their cause, the legislature must make them insurers.

There was no warranty, express or implied, that the 1962 Corvair would not catch on fire if involved in a collision. Plaintiff claimed that it was unfit because the placement of the gas tank constituted a fire hazard in the event of a collision.

There certainly is no claim stated based upon express warranty. It is not alleged that the defendant ever represented that this automobile had the gas tank in some place other than where it was. Nor that there was any misrepresentation as to the design or manner in which the automobile was manufactured. Nor is it alleged that the defendant ever represented or warranted that the car was fireproof under any circumstances, and particularly if involved in a collision. Nor is it alleged that defendant ever warranted or represented that the car could engage in collisions in complete safety. Nor is there any allegation that the plaintiff's decedent died in the course of an intended use of the car. The contrary is disclosed by the complaint. The law does not require a manufacturer to make an automobile that will be safe when involved in collisions, and thus the law does not imply that a manufacturer warrants his product to be fit for that purpose.

■ The plaintiff further claims "Wanton and Wilful Misconduct". Yet there are no facts alleged which would support such a conclusion under the Ohio law.

Defendant had a duty to design its 1962 Corvair to be reasonably fit for the purpose for which it was made and without hidden defects which would make the car dangerous to persons using it. The duty of the defendant to the plaintiff's decedent does not include a duty to design its automobile so as to prevent any and all injuries or death, including those caused by fire, resulting from vehicle collisions, or to warn automobile users that a car may catch fire and injury or death result by driving it forcibly into another vehicle. To hold otherwise would render every auto-

mobile manufacturer an insurer of the safety of all persons on the highways under all circumstances and conditions.

The motion of the defendant, General Motors Corporation, to dismiss the plaintiff's complaint for the reason that each of the counts of said complaint fails to state a claim against said defendant upon which relief can be granted is hereby sustained.

Complaint filed by plaintiff is dismissed.