Nick STRIMBU and Julia Strimbu, Plaintiffs-Appellants,

v.

AMERICAN CHAIN & CABLE COMPANY INC., Defendant-Appellee.

No. 74–1875.

United States Court of Appeals, Sixth Circuit.

May 21, 1975.

---

James A. O'Brien, Luchette, Hoffman & O'Brien, Brookfield, Ohio, for plaintiffs-appellants.

William H. Wallace, Michael M. Hughes, Thompson, Hine & Flory, Cleveland, Ohio, for defendant-appellee.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and RUBIN*, District Judge.

* The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation.

PER CURIAM.

This is an appeal in a products liability case from a directed verdict in favor of the defendant at the conclusion of the plaintiffs' case. The appellate inquiry in such a case is to determine whether the evidence viewed in a light most favorable to the plaintiffs would support a jury verdict in their favor. Hamden Lodge I. O. O. F. v. Ohio Fuel Gas Co., 127 Ohio St. 469, 189 N.E. 246 (1933). Upon concluding that it would not, we affirm the determination of the District Court.

Appellants' case arose under the following circumstances: In November of 1969 appellants installed in their newly constructed residence a dumbwaiter designed and constructed by Mecomatic, Inc., to raise and lower articles from the second floor to the basement of the home. The hoist which raised and lowered the dumbwaiter was manufactured by appellee, American Chain & Cable Co., Inc. The dumbwaiter cab was connected to the hoist with a chain and an open hook. The hook was placed off center causing the cab to be improperly aligned in the dumbwaiter shaft.

On July 21, 1970, appellant Julia Strimbu placed some laundry into the dumbwaiter cab, pressed the button for the unit to descend and proceeded to the basement. Upon arriving in the basement, she discovered the cab had stopped on the first floor of the house. Returning to the first floor of the house she placed some additional towels or other linen in the cab of the dumbwaiter and as she did so, the dumbwaiter suddenly dropped and fell to the basement causing serious and permanent injury to both of her hands.

The evidence at trial indicated that the dumbwaiter unit had become stuck between floors and was freed by the additional weight of the laundry.

Appellee's hoist is a standard product available in the open market to raise and lower loads as required. It was purchased as one of seven similar hoists by Mecomatic, Inc., and installed in the dumbwaiter. As a component part of the dumbwaiter installation it was designed to raise and lower the dumbwaiter cab and it functioned as it was intended to do. The appellants asserted two theories of liability. A claim of strict liability in tort and a negligent failure by the appellee to warn them of a dangerous condition.

The Supreme Court of Ohio first recognized a theory of recovery for breach of a duty on the part of a manufacturer "by reason of his implicit representation of good and merchantable quality and fitness for intended use" in Lonzrick v. Republic Steel Corp., 6 Ohio St.2d 227, 218 N.E.2d 185 (1966). It established the following elements as part of the plaintiff's burden of proof under a strict tort theory of liability: "For the plaintiff to recover, he must prove, by the required degree of proof, [1] that the joists were defective, [2] that they were defective at the time the manufacturer sold them, [3] that the defect caused them to collapse while they were being used for their ordinary intended purpose, [4] that the defect was the direct and proximate cause of the plaintiff's injury, and [5] that the plaintiff's presence was in a place which the defendant could reasonably anticipate." 6 Ohio St.2d at 237, 218 N.E.2d at 192, 193.

No evidence was presented by appellant of a malfunctioning or failure in the hoist manufactured by appellee. Indeed, there is no question that the hoist, as a hoist, worked perfectly. The evidence likewise clearly established the proximate cause of the accident in question was the shoddy design and installation of the dumbwaiter unit itself.

Appellants contend that the design of the hoist was defective in that it failed to include a "slack chain device" which would have prevented the accident in question. A "slack chain device" causes a dumbwaiter to automatically stop when tension is removed from the chain. The hoist, however, initially did contain what was referred to as a "deadman switch" which causes a dumbwaiter to cease operating as soon as pressure is removed from the switch. The "dead-

man switch" was removed before installation in the Strimbu home. While the evidence was conflicting on whether such a slack chain device could have been incorporated into appellee's product, it was undisputed that such device was unnecessary when used in conjunction with a deadman switch for normal industrial uses.

Appellants' expert testified that a slack chain device, if incorporated into appellee's hoist, would render it unsuitable for normal industrial purposes.

■ While held to a standard of reasonable care, a manufacturer need not anticipate all uses to which his product may be put, nor to insure or guarantee that his product is incapable of causing injury in all of its possible uses. Lonzrick v. Republic Steel Corp., *supra*; Oropesa v. Huffman Mfg. Co., 9 Ohio App.2d 337, 224 N.E.2d 530 (1965); Shumard v. General Motors Corp., 270 F.Supp. 311 (S.D.Ohio 1967). *See*: Garrison v. Rohm and Haas Co., 492 F.2d 346 (6th Cir. 1974).

■ The hoist in question was reasonably safe when used in its normal industrial application. Its adaptation to another use cannot impose an additional duty on the manufacturer to include a safety device incompatible with its normal industrial application.

■ We conclude that appellee's hoist was not a proximate cause of the accident in question, and that there was no duty to warn under the facts and circumstances of this case. Accordingly, the determination of the District Court granting a directed verdict for the defendant at the conclusion of the plaintiff's case is affirmed.