Peter R. BRINEY, et al., Plaintiffs-Appellants,

v.

SEARS, ROEBUCK & COMPANY, et al., Defendants-Appellees.

No. 84–3874.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1985.

Decided Jan. 28, 1986.

Lee E. Plakas (argued), Tzangas, Plakas & Mannos, Canton, Ohio, for plaintiffs-appellants.

George J. Moscarino, Peter A. Carfagna, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Paul G. Crist (argued), for defendants-appellees.

Before MARTIN, CONTIE and WELL-FORD, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiffs Peter and Carolyn Briney, in this products liability action, appeal from the district court's order granting defendants' motions for directed verdict on two design defect claims and from the jury's adverse judgment on the remaining failure to warn and instruct claim, asserting various flaws in the jury instructions. For the reasons set forth below, we reverse in part and affirm in part.

## I.

In 1977 Peter Briney purchased a Sears Craftsman 10-inch electric table saw which was manufactured by Emerson Electric Company (Emerson) and marketed by Sears, Roebuck & Company (Sears). The table saw was accompanied by an Owner's Manual which contained assembly, operation, repair and general safety instructions.

Briney testified that he assembled the saw according to the Manual's directions and had referred to the Manual on other occasions.

On November 23, 1980, Briney was using the table saw to make a combination mailbox and planter. In order to complete this project, Briney determined that it would be necessary to make a relatively complex cut known as a compound mitre cut. A compound mitre cut is a combination of a bevel cut and a mitre cut. This means that the saw blade is tilted at an angle other than being perpendicular to the table—the blade is therefore beveled—, and that the workpiece itself is pushed toward the blade at an angle other than 90 degrees, which is a mitre cut. Although the Owner's Manual contains illustrations of a bevel cut and a mitre cut, it does not contain one for a compound mitre cut. The instructions state that for a bevel cut, the workpiece should be pushed toward the blade from the right side of the blade.[1] The mitre cut illustration has the workpiece on the left side of the blade. The only description of a compound mitre cut is the definition which states that it is a combination of a mitre and a bevel cut.

To complete this compound mitre cut, Briney decided to work on the left-hand side of the blade. He discovered that when he pushed the wood close to the blade, the blade guard "interfered" with—came into contact with—the rotating blade, damaging the guard and preventing him from completing this cut. Briney then removed the entire blade guard assembly.[2] After removing the guard assembly, Briney completed one cut without incident. On the next cut, however, which was either a straight bevel cut or a compound mitre cut,[3] the workpiece and Briney's left hand

---

1. On this table saw, there are grooves in the table on both sides of the sawblade where the mitre gauge, which holds the workpiece at the preferred angle, fits into place and can slide the width of the table in order to complete a cut.

2. This assembly consists of three major safety features: (1) blade guard, a piece of clear plastic which covers the blade; (2) antikickback pawls, a device to prevent the workpiece from being

thrown; and (3) spreader, a metal sheet behind the blade which prevents the workpiece from gripping the blade after it has been cut.

3. At trial, Briney testified that he was attempting to do a compound mitre cut, but his deposition stated that he was completing a bevel cut which would involve changing the angle of the mitre gauge so that the workpiece was at a 90 degree angle to the blade. Simon Tamny, a

were pulled into the blade and he sustained serious injuries.

Peter and his wife Carolyn filed a suit against Emerson and Sears for personal injuries and loss of consortium in the United States District Court for the Northern District of Ohio pursuant to diversity jurisdiction. Design defect claims were based on both strict liability and negligence theories. The remaining claim was based on a theory of failure to warn and failure to instruct. The case was tried before a jury, but after hearing all the evidence the district court granted both Sears' and Emerson's motions for directed verdict with respect to the design defect claims, as well as Sears' motion for directed verdict on the negligent failure to warn and instruct claim. On the remaining claim against Emerson, the jury returned a verdict against the Brineys.

The appellants argue that the district court erred in directing a verdict against them on the design defect claims. They also contend that the jury verdict must be set aside because of various jury instruction errors.

## II.

■ When exercising diversity jurisdiction, a federal district court must apply the forum state's standard for directed verdict since the federal rule governing directed verdicts, Fed.R.Civ.P. 50(a), does not specify a standard for granting or denying such a motion. *Arms v. State Farm Fire & Casualty Co.,* 731 F.2d 1245, 1248 (6th Cir.1984). Appellate courts apply the same standard when reviewing a lower court's grant of a directed verdict motion. *Hersch v. United States,* 719 F.2d 873, 877 (6th Cir.1983).

In Ohio, the civil rule governing the standard for granting a directed verdict motion states in full:

When a motion for a directed verdict has been properly made, and the trial court, after *construing the evidence most strongly in favor of the party against*

*whom the motion is directed,* finds that upon any determinative issue *reasonable minds could come to but one conclusion upon the evidence submitted* and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Ohio R.Civ.P. 50(A)(4) (emphasis added). In determining whether reasonable minds can reach but one conclusion, the court cannot "consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion." *Strother v. Hutchinson,* 67 Ohio St.2d 282, 284, 423 N.E.2d 467 (1981) (per curiam). In order to avoid an adverse directed verdict ruling, a plaintiff must have produced evidence which supports "every element essential to establish liability, or produce evidence of a fact upon which a resonable inference may be predicated to support such element." *Id.* at 285, 423 N.E.2d 467.

Therefore, this court must determine, when viewing the evidence in the light most favorable to the appellants, whether they presented some evidence on every element of a negligent design claim and strict liability in design claim or whether reasonable minds could reach only the opposite conclusion.

## A.

■ A defective design claim premised on a negligence theory has three basic elements: (1) *duty* to design against reasonably foreseeable hazards; (2) *breach* of that duty; and (3) *injury,* which was proximately caused by the breach. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). A product need not be "accident or foolproof, but safe for the use for which it was intended." *Gossett v. Chrysler Corp.,* 359 F.2d 84, 87 (6th Cir.1966). *See also Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 326, 364 N.E.2d 267 (1977); *Sours v. General Motors Corp.,* 717 F.2d 1511, 1517 (6th

mechanical engineer and expert witness for the plaintiffs, testified that an examination of the

workpiece showed that a compound mitre cut was attempted.

Cir.1983). In the instant case, it is necessary to determine whether the plaintiffs produced evidence that Peter Briney was injured as a result of Emerson's failure to design against a reasonably foreseeable hazard. The test for determining whether a particular hazard is foreseeable, is "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee*, 15 Ohio St.3d at 77, 364 N.E.2d 267.

Appellants' key witness was Simon Tamny, a mechanical engineer. Mr. Tamny had examined the table saw's design and was asked to opine as to the causes of Peter Briney's accident and how it might have been prevented through design changes. Tamny testified that it was reasonably foreseeable that (1) an owner of this table saw would attempt a compound mitre cut from the left-hand side of the blade, and (2) an owner would remove the blade guard after discovering that, because of interference between the guard and the saw blade, he could not complete a cut which the machine was designed to accomplish. Tamny testified further that he had developed a modification for the blade guard that would have prevented the guard from being pushed into the blade. He also opined that had a hold-down clamp, which is an optional device, been used or if the mitre gauge had been designed so that it could not be used in the left channel when the saw was beveled, Briney's injuries could have been avoided.

Tamny was of the opinion that the instructions provided in the Manual did not adequately describe how a compound mitre cut should be performed. He also testified, however, that the adequacy of the instructions did not necessarily affect one's determination as to whether a particular design was defective since an Owner's Manual can always be lost. Therefore, he testified that one must judge the table saw's defective character by its design and not its instructions.

Tamny opined further that the blade guard design violated Section 6.1.2.4 of the American National Safety Institute's (ANSI) Safety Requirements for Woodworking Machinery, which provides:

> The hood shall be so mounted as to insure that its operation will be positive, reliable, and in true alignment with the saw; and the mounting shall be adequate in strength to resist any reasonable side thrust or other force tending to throw it out of line.

Tamny testified that the blade guard did not properly maintain its alignment when there was a reasonable side thrust. Appellants assert that Tamny's opinion is further evidence of negligent design of the blade guard.[4]

■ The district court reasoned that a directed verdict was appropriate because the blade guard design did not constitute a defect, and did not proximately cause Briney's injuries. The district court relied on Tamny's testimony that the blade guard design technically constituted a "flaw" rather than a "defect" because the interference itself does not cause injury. He went on to say, however:

> The fact that the guard crowds into the blade in the picky use of the language is called a flaw. I mean it doesn't work right. It therefore can be reasonably expected to lead somebody to take it off. People—this is a well known characteristic of the use of products. If things don't work, people do something about them. So what you end up with is a defective condition because the part doesn't work.

We believe the district court misconstrued this testimony, and are of the opinion that Tamny's testimony provides some evidence on each element of a negligent design claim. First, the appellants' theory does

---

4. Tamny noted that this safety standard was equivalent to a provision in the Occupational Safety and Health Administration (OSHA) Standards, and the design of the blade guard therefore violated both OSHA and ANSI standards. However, since OSHA regulations only apply to employers and were not promulgated for consumer safety, *McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir.1981), they cannot be relied on here as evidence of negligent design.

not rest on the belief that the interference between the blade and the blade guard is hazardous because it directly causes an injury, but because it is reasonably foreseeable that a consumer would remove the blade guard assembly upon experiencing blade/blade guard interference, thereby exposing himself to a risk. This is evidence of a reasonably foreseeable hazard. Second, Tamny's testimony supports the argument that the defendants should have, and could have, designed against this foreseeable risk. Last, there is evidence of causation because "but for" the blade/blade guard interference, the guard assembly would not have been removed, and Briney would not have injured himself. We believe that this expert testimony is more than a mere scintilla of evidence on each element of a negligent design claim; and viewing the evidence in the light most favorable to the appellants, we cannot conclude, as the district court did, that reasonable minds could come to but one conclusion.

The appellees assert that Peter Briney's actions in removing the guard show that he clearly assumed the risk and that a directed verdict was nonetheless appropriate. Since the concepts of contributory negligence and assumption of the risk have been merged under the Ohio comparative negligence statute, Ohio Rev.Code § 2315.19, see Anderson v. Ceccardi, 6 Ohio St.3d 110, 451 N.E.2d 780 (1983), neither contributory negligence nor assumption of the risk is a complete bar to a negligent design claim. Accordingly, in order for a directed verdict to be appropriate under a negligent design theory, it must be determined that reasonable minds would inevitably agree that Peter Briney was more negligent than the manufacturer.

The general rule is that the question of assumption of the risk is a factual one which should be left to the jury, except when reasonable minds can reach but one conclusion. *Kafel v. Republic Steel Corp.*, 30 Ohio St.2d 55, 60, 282 N.E.2d 350 (1972). The degree of the defendants' negligence is likewise a factual question. Although we conclude *infra* that Briney's actions do bar

a strict liability claim under the theory of assumption of the risk, to determine which party is *more at fault* is a question of fact which we believe would involve careful scrutiny of the evidence. We are of the opinion that the jury, which has heard all the evidence and observed the witnesses' demeanor, is in the more appropriate position to weigh these issues, particularly since a court should not consider the weight or credibility of testimony in a directed verdict motion. We therefore hold that the district court erred by granting a directed verdict on the appellants' negligent design claim.

**B.**

The elements of design defect claim based on a strict liability theory are:

"(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss."

*Temple v. Wean United*, 50 Ohio St.2d at 321, 364 N.E.2d 267 (quoting *State Auto Mutual Insurance Co. v. Chrysler Corp.*, 36 Ohio St.2d 151, 304 N.E.2d 891 (1973)). Plaintiffs must have produced evidence on each of these three elements to prevent a grant of a directed verdict.

There are two tests, under a strict liability theory, to determine if a product design is defective:

(1) [I]t is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the benefits of the challenged design do not outweigh the risk inherent in such design. Factors relevant to the evaluation of the defectiveness of the product design are the likelihood that the product design will cause injury, the gravity of the danger posed, and the mechanical and economic feasibility of an improved design.

*Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 466, 432 N.E.2d 814, *cert. de-*

*nied,* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). Plaintiffs' expert Mr. Tamny testified that it was reasonably foreseeable that this design would lead a consumer to remove the blade guard, which clearly would expose an individual to a grave danger, and he proposed different designs which were mechanically and economically feasible.

The district court reasoned that there was no defect in the blade guard design because "standing alone, it neither constituted nor created any risk of injury." The court then stated that the guard may not have interfered during the accident cut itself, and that the accident would not have happened were the guard in place. This rationale misses the essence of the plaintiffs' argument as to what constituted the defect: that the interference between the blade guard and the saw blade, which prevents consumers from completing compound mitre cuts or bevel cuts from the left-hand side of the blade, could reasonably result in a consumer removing the guard assembly.

Even if a product is arguably defective, however, appellants must also establish that the table saw was in the same condition as when it was purchased. The district court reasoned that the removal of the blade guard was a "substantial change." The case law does not substantiate this conclusion. In the instant case, the table saw was designed so that the guard could be removed for some cuts. Were the plaintiff to have added a part, or remodeled the table, there would clearly have been a substantial change. *See, e.g., King v. K.R. Wilson Co.,* 8 Ohio St.3d 9, 455 N.E.2d 1282 (1983) (changing electrical activation system on a die cast trim press machine from two palm buttons to two pull-back safety handles constituted substantial change); *Temple v. Wean United,* 50 Ohio St.2d at 322–23, 364 N.E.2d 267 (adding a different clutch valve, rotary switch and operating buttons on a power press constituted a substantial change). The interference between the saw blade and guard was not a result of substantial change but was inherent in the manufacturer's design. To hold that removing the guard assembly was a substantial change also ignores the theory of the plaintiffs' claim altogether. Although the injury resulted once the guard assembly had been removed, that fact is relevant only to the issues of causation and assumption of the risk rather than to whether the product was substantially changed. We conclude, therefore, that plaintiffs produced some evidence on each element of a strict liability design defect claim.

■ However, assumption of the risk continues to be a complete defense to a strict liability claim. *Bailey v. V & O Press Co.,* 770 F.2d 601 (6th Cir.1985). *See also Benjamin v. Deffet Rentals, Inc.,* 66 Ohio St.2d 86, 419 N.E.2d 883 (1981). To establish a defense for assumption of the risk, it is necessary to show "(1) consent to or acquiescence in (2) an appreciated or known (3) risk...." *Wever v. Hicks,* 11 Ohio St.2d 230, 234, 228 N.E.2d 315 (1967). Further, "the obviousness of the danger is a factor to be considered in determining whether a plaintiff voluntarily and unreasonably encountered a known danger...." *Miller v. Utica Mill Specialty Machinery Co.,* 731 F.2d 305, 308 (6th Cir.1984). As previously stated, assumption of the risk inherently involves a question of fact because it generally deals with an individual's subjective state of mind as well as objective considerations. The district court reasoned that Peter Briney knew that a compound mitre cut was a "thru-cut",[5] the Owner's Manual required the blade guard to be in place for all thru-cuts; Briney had read and understood the Manual's instructions; the dangers were obvious; and both the Manual and table saw had descriptions of the dangers. We agree with the district court that this is substantial evidence to establish that Briney was aware of the risks involved with an unguarded blade and that he voluntarily removed the guard. Although appellants' theory rests on the presumption that the design of the blade

5. A "thru-cut" is when the saw blade cuts all the  way through the length of the workpiece.

guard caused him to remove the guard, this court cannot ignore the obviousness of the danger and the voluntariness of Briney's actions, even if Briney's actions were reasonably foreseeable by the manufacturer. As a matter of law, therefore, we conclude that Briney assumed the risk, and that his strict products liability claim is barred.

## III.

Appellants also contend that the jury instructions on the failure to warn and instruct claim were inadequate and that the court wrongfully rejected their proffered instructions. Specifically, appellants argue that the district court erred by: (1) refusing to give a requested instruction relating to the degree of knowledge and skill required of a manufacturer; (2) refusing to give instructions relating to the distinction between warnings and directions as well as the adequacy of directions; (3) failing to use the term "corporation" in conjunction with the term "person"; and (4) failing to give requested clarifying instructions relating to a corporation's ability to act solely through its agents and whether a corporation can be presumed to have acted in accordance with the law. We have considered each of these assignments of error and find them to be without merit.

Accordingly, the district court's order granting a directed verdict against Emerson on the negligent design claim is REVERSED, and REMANDED for trial by jury. The judgment on the remaining claims are AFFIRMED.

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

I concur in Judge Contie's well reasoned disposition of the design defect claim based on a strict liability theory set out in Part IIB of the opinion. I concur also in the disposition of the claimed error in the jury verdict as set out in Part III.

I would, however, affirm the district court in its directed verdict on the negligent design claim. The actions of Briney constituted not only a clear assumption of risk but, in my view, that kind of negli-

gence and disregard of intended use of the saw in question that would preclude any reasonable trier of fact from reaching a decision for plaintiff. Plaintiff's expert, Tamny, testified on cross-examination as follows:

Q. You can lift the guard up, Mr. Tamny, leaving the spreader and the anti-kickback pawls in place, can you not?

A. That's true.

Q. That was not done, was it?

A. That's right.

Q. Similarly, the anti-kickback pawls, which were also designed to prevent the most common type of accidents on this table saw, were removed, were they not?

A. The whole guard assembly was taken off and that consists of the guard, the guard support arm, the anti-kickbacks and the spreader which were all permanently fastened together.

THE COURT: Is that your answer, is it yes?

THE WITNESS: It's not a separate item, your Honor.

THE COURT: He is not indicating nor suggesting that it's a separate item. He is simply asking you whether this was removed, whether it was removed in conjunction with other parts or separately.

THE WITNESS: Okay. Yes. It's a part of what was removed.

THE COURT: Okay.

BY MR. CRIST:

Q. Mr. Briney at the time of this accident was, to your understanding, performing a through cut, was he not?

A. Yes.

Q. The manual has repeated warnings to the effect that the guard should not be removed during through cuts, does it not?

A. That's right.

Q. And those instructions are more than sufficient to communicate that message, aren't they?

A. I think so.

Q. That warning is also contained on the saw itself, is it not?

A. I believe so.

Q. You don't know?

A. I think it's on the front of the saw.

    \*    \*    \*    \*    \*    \*

(Pause).

A. Yes. Item two says, "Use saw blade guard for through sawing."

Q. \* \* \*

Mr. Briney violated the repeated warnings in the owner's manual not to remove the blade guard during through cuts, did he not?

A. That's right.

Q. Mr. Briney violated the instruction set forth on the saw itself not to remove the blade guard on through cuts, did he not?

A. Sure.. I mean it's the same instruction.

Q. And in doing so he exposed himself to a significant hazard, did he not?

A. Yes.

Q. If the guard had been in place, Mr. Briney's accident would not have occurred, would it?

A. Probably not. At least the likelihood would have been greatly reduced.

It was also apparent to the expert that the kind of cut attempted should have been attempted from the other side of the saw. Not only did Briney remove three safety devices, he also attempted a cut from the wrong side of the saw so that the mitre gauge hold down clamp would not be effective. I would hold that the saw under these circumstances was not being used in an intended or reasonably foreseeable manner as a matter of law despite Tamny's testimony about a design flaw or defect.

It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. *Di Guldo v. Caponi* (1969), 18 Ohio St.2d 125, 247 N.E.2d 732 [47 O.O.2d 282]; *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 226 N.E.2d 564 [39 O.O.2d 228]. The existence of a duty depends on the foreseeability of the injury. *Ford Motor Co. v. Tomlinson* (C.A.6, 1956), 229 F.2d 873 [59 O.O. 345]; *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E.2d 924.

The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626; *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 224 N.E.2d 131 [38 O.O.2d 294]; *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 90 N.E.2d 859 [41 O.O. 117]. The foreseeability of harm usually depends on the defendant's knowledge. *Thompson, supra.*

    \*    \*    \*    \*    \*    \*

The design of a product cannot be held defective or unreasonably dangerous under Section 402(A) of the Restatement of Torts 2d unless the product is being used in an intended or reasonably foreseeable manner. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 424 N.E.2d 568 [21 O.O.3d 285]. Furthermore, a manufacturer need not anticipate all uses to which its product may be put, nor guarantee that the product is incapable of causing injury in all of its possible uses. *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 218 N.E.2d 185 [35 O.O.2d 404]. See, also, *Strimbu v. American Chain & Cable Company, Inc.* (C.A.6, 1975), 516 F.2d 781; *Shumard v. General Motors Corp.* (S.D.Ohio 1967), 270 F.Supp. 311 [41 O.O.2d 345]; *Jones v. White Motor Corp.* (1978), 61 Ohio App.2d 162, 401 N.E.2d 223 [15 O.O.3d 292]; *Oropesa v. Huffman Mfg. Co.* (1965), 9 Ohio App.2d 337, 224 N.E.2d 503 [38 O.O.2d 390].

*Menifee v. Ohio Welding Products, Inc.,* 472 N.E.2d 707, 710, 711 (Ohio 1984).

Even assuming that the saw may have been designed in a safer manner, I would affirm the decision of the district court on the negligent design claim under the circumstances of this case.