David L. GOLDSMITH; Linda S. Goldsmith, Plaintiffs–Appellants (89–4052), Cross–Appellees (89–4112),

Margaret A. Andrews, Executrix, Estate of Olon E. Andrews, Deceased, Plaintiff–Appellant (89–4053), Cross–Appellee (89–4112),

v.

OLON ANDREWS, INC., Defendant,

Bell Helicopter Textron, Inc., Defendant–Appellee (89–4052/4053), Cross–Appellant (89–4112).

Nos. 89–4052, 89–4053 and 89–4112.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1990.

Decided Aug. 6, 1991.

Michael F. Jilek, Sr., Williams, Jilek & Lafferty, Toledo, Ohio, for David L. Goldsmith.

Michael F. Jilek, Sr., Robert M. Scott, Williams, Jilek & Lafferty, Toledo, Ohio, for Linda S. Goldsmith.

Gordon A. Senerius (argued), Maumee, Ohio, for Margaret A. Andrews.

Jeffrey Robert White, [NTC ret] Washington, D.C., for amicus curiae Association of Trial Lawyers of America.

James M. Wiles (argued), Craig D. Andrew, Wiles, Doucher, Van Buren & Boyle, Columbus, Ohio, Ronald S. Moening, Robison, Curphey & O'Connell, Toledo, Ohio, for Bell Helicopter Textron, Inc.

Stanley Green, Cleveland, Ohio, Judith Richards Hope, Joseph E. Schmitz, Scott M. Flicker, Paul, Hastings, Janofsky and Walker, Washington, D.C., for amicus curiae General Aviation Mf'rs Ass'n.

Before NORRIS, Circuit Judge, WELLFORD, Senior Circuit Judge,[*] FORESTER, District Judge.[**]

ALAN E. NORRIS, Circuit Judge.

Plaintiffs originally brought this tort action in the courts of Ohio; however, the case was removed to the United States District Court for the Northern District of Ohio on the ground of diversity jurisdiction. The action arises from damages resulting from the crash of a helicopter assembled by Olympic Helicopters using manuals, descriptions, and new and used parts from defendant, Bell Helicopter Textron, Inc. ("Bell"). After first denying Bell's motion for summary judgment on the issues of strict liability for defective design and negligent design, the district court later granted Bell's motion for directed verdict on the same issues, and dismissed the case. Plaintiffs now appeal the district court's decision to grant the motion for directed verdict; in a defensive cross-appeal, Bell challenges the district court's earlier decision denying its motion for summary judgment. Plaintiffs also challenge the district court's ruling that one of plaintiffs' expert witnesses was not qualified and that his testimony should be stricken. Since we conclude that the district court improperly denied the motion for summary judgment, and properly granted the motion for directed verdict, we do not reach the expert witness issue.

I.

In 1984, a helicopter owned by Olon Andrews, Inc., crashed and caught fire. Olon Andrews, the pilot of the helicopter, and plaintiff David Goldsmith, a passenger, both suffered injuries in the crash, primarily from the fire. Andrews died from his injuries. Olon Andrews, Inc., purchased the helicopter from Olympic Helicopters ("Olympic") in July of 1982. Olympic had assembled the helicopter to the specifications of a "Bell Model 47" helicopter from spare, new, and surplus parts acquired from various sources, including defendant Bell. To assemble the helicopter, Olympic used Bell maintenance, overhaul and parts manuals, service bulletins and instructions. Although Olympic did not have any license or contractual relationship with Bell for the assembly or sale of helicopters, Bell knew something about Olympic's activities be-

---

[*] The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

[**] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

cause Olympic called Bell on several occasions for technical information.

Bell manufactured the Model 47 helicopter from 1947 to 1974. Even though the last Model 47 was sold in 1974, Bell has continued to provide product support to operators of the Model 47s. For example, operators who originally purchased Model 47s from Bell continue to receive all product improvement letters and bulletins. These letters and bulletins are also available to any other interested person by subscribing to Bell. Olympic's employees were aware of Bell's letters and bulletins, and either had them or knew how to obtain them.

In 1976, Bell improved the crashworthiness of the fuel system for the Model 47 by providing retrofit kits for fiberglass-wrapped fuel tanks and breakaway fittings for the fuel lines. Bell notified operators of the improvements through the issuance of an Alert Service Bulletin. The bulletin describes the Bell models involved, the type of kits needed to make the improvements, and states that the improvements should be completed by April 15, 1977. Had Bell resumed production of the Model 47 after designing the improvements, Bell would have been required by FAA regulations to include the improvements in the new helicopters. The FAA, however, did not require existing helicopters to include the improvements. Although Olympic noted the purpose of the improvements in the log book for the helicopter that crashed, Olympic did not include these improvements on the fuel system installed in the helicopter.

In 1986, plaintiffs brought suit under state tort law for the injuries sustained in the crash. At issue on appeal are the claims against defendant Bell based upon strict liability for defective design and negligent design of the fuel system in the Model 47 as assembled by Olympic.[1] To resolve these issues, we must determine whether, under Ohio law, Bell can be liable in tort on a theory of strict liability or negligence where Olympic assembled the helicopter using Bell specifications, manuals, and instructions.

## II.

█ A federal district court exercising diversity jurisdiction must apply the forum state's standard for granting and denying directed verdicts. *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir. 1986). In Ohio, the applicable standard is set forth in Ohio R.Civ.P. 50(A)(4):

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

This standard for granting motions for directed verdicts essentially mirrors the standard for granting motions for summary judgments.[2]

█ In responding to defendant's motion for summary judgment, the district court correctly noted that, in Ohio, the Restatement (Second) of Torts § 402A (1965) is followed in analyzing claims of strict liability and implied warranty.[3] *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). Section 402A states as follows:

> Special Liability of Seller of Product for Physical Harm to User or Consumer.

---

1. Plaintiffs also brought claims against Bell for negligent and defective *manufacture* of the helicopter in question. The district court dismissed these claims on Bell's motion for summary judgment.

2. The Ohio standard for directed verdicts is very similar to the federal standard. *Compare* Ohio R.Civ.P. 50(A)(4) *with Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511,

91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court reasoned that this federal standard for directed verdicts mirrored the standard for summary judgments. *Id.*

3. We do not discuss plaintiffs' negligence claim separately because the manner in which we resolve plaintiffs' strict liability claim also resolves the negligence claim.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Although plaintiffs do not contend that the helicopter in question was sold or manufactured by Bell, they nevertheless say that Bell should be liable for designing the allegedly defective fuel system used in the Olympic helicopter. They argue that it does not matter who sold or assembled the helicopter because, had Bell assembled the helicopter itself in strict compliance with its own manuals, the case would center on a design defect, not a manufacturing defect. Plaintiffs maintain that Bell unleashed this dangerous design upon the public, and supported the design by making available manuals and parts.

When approving Section 402A of the Restatement as an accurate statement of Ohio law, the Ohio Supreme Court stated that the Restatement's formulation and "numerous illustrative comments, greatly facilitate analysis in this area." *Temple*, 50 Ohio St.2d at 322, 364 N.E.2d 267. One of the Restatement's comments sets forth the rationale underlying strict liability:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A comment c (1965).[4]

The rationale for strict liability explains section 402A's requirement that "the seller [be] engaged in the business of selling [the defective] product." If the defendant is not engaged in the business of selling the product, then it cannot be said to have "undertaken and assumed [the] special responsibility toward ... the consuming public." Furthermore, such a defendant has not been afforded the opportunity to treat the risk of producing the product "as a cost of production against which liability insurance [could have been] obtained." Finally, a defendant in Bell's position that did not place the product in commerce has no ability to control the quality of the product or the conformance of the product with its design. The public should not expect to rely upon someone who has not placed the product in the stream of commerce.

Accordingly, in order to satisfy the rationale for strict liability, Bell must be deemed a seller. It is undisputed that Bell

---

**4.** The rationale discussed in comment c of section 402A is similar to the rationale for strict liability discussed in the Ohio Supreme Court's seminal strict liability case, *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 234, 218 N.E.2d 185, 190 (1966) ("This 'kind of warranty' [a warranty in tort, later interpreted as strict liabil- ity] arose not out of a contract of sale but out of the duty of a manufacturer or seller of a product to protect the person consuming or using that product in the ordinary way in which it was intended to be used from the harm of injury to person or property caused by a defect in the product.").

stopped selling the Model 47 helicopter in 1974. Therefore, under the circumstances of this case, the only "product" with which Bell can be associated is the design of the Model 47 and its fuel system. However, there is no evidence that Bell was in the business of placing this design in commerce. Bell did not offer for sale any designs, plans, or blueprints for the Model 47 or its fuel system. In fact, Bell had made two improvements to the fuel system and issued an Alert Service Bulletin recommending the installation of the new system. Furthermore, Bell never licensed, sanctioned, or approved Olympic's use of Bell's design to manufacture the helicopter. Although Olympic did use Bell's manuals, service bulletins, instructions, and parts, and Bell did respond to Olympic's telephone calls for technical assistance, it is not reasonable to infer from this evidence that Bell sanctioned or approved of Olympic's manufacture of the helicopter.

To hold that Bell is a "seller" of a product, as contemplated by Ohio's definition of the tort of strict liability for products, would require us to expand upon existing Ohio case law, since Bell did not control production of the helicopter, could not assure conformance with its improved designs, and was in no position to treat the risks of producing the helicopter as costs of production, or obtain liability insurance. Because plaintiffs have been unable to point to any indication that the Ohio Supreme Court would expand the scope of Ohio's laws to include Bell within the definition of a seller or manufacturer of a product subject to strict liability, we are not inclined to speculate that it would. Accordingly, the lower court correctly granted a directed verdict and should have granted Bell's earlier motion for summary judgment.

### III.

For the reasons given above, we affirm the district court's decision to grant a directed verdict in defendant Bell's favor, and reverse the district court's decision to deny Bell's early motion for summary judgment. Since we reverse the district court's

decision to deny Bell's motion for summary judgment, we need not address whether the testimony of plaintiff's expert witness was properly stricken from the record.