OPINION
{¶ 1} Plaintiff-appellant, John Boettcher, appeals the decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, *Page 2 
Gradall Company and JLG Industries, Inc.
 {¶ 2} On March 11, 2005, Boettcher, an employee of Graycor Industrial Contractors, Inc., was working at the AK Steel plant in Middletown, Ohio. That afternoon, Boettcher was told to escort a rough terrain forklift ("RTF") through the Basic Oxygen Furnace Building, a part of the AK Steel plant, so that it could be used to replace a worn beam. Boettcher was knocked to the ground and suffered a severe injury when the RTF's left rear tire rolled over his right foot and leg.
 {¶ 3} At approximately 4:00 p.m., Boettcher was instructed to wait outside for an RTF to arrive. After the RTF arrived, Boettcher and David Blanden, the RTF operator, discussed Boettcher's duties as its escort. After the operator provided Boettcher with the initial instructions, Boettcher entered the building and walked with the RTF toward the designated work area.
 {¶ 4} After arriving at the work area, Boettcher and the operator stopped to discuss what they would do next. According to Boettcher, they agreed that the RTF would make a left-hand turn into the space where the crew was working. However, according to the operator, they agreed to make a right-hand turn into an empty space to await further instructions.
 {¶ 5} After their discussion ended, Boettcher turned and began walking away from the RTF. Thereafter, the operator moved the RTF forward, looked to his right, looked to his left-where he saw Boettcher, looked back to the front, and began to turn the RTF to the right. The operator did not look back to his left. As the operator began to turn, he felt something, looked back to his left, and realized that the RTF had hit Boettcher.
 {¶ 6} Boettcher filed suit against Gradall Company, which manufactured the RTF, and later amended his complaint to include the owner of Gradall, JLG Industries (collectively "defendants"). Boettcher alleged that the defendants were liable for his injuries under a strict *Page 3 
product liability theory due to a negligent design in the RTF. Specifically, Boettcher argued that the RTF is negligently designed because it is not equipped with a driver's side-view mirror and an overhead rearview mirror.
 {¶ 7} Defendants moved for summary judgment claiming that Boettcher could not establish that his injuries were caused by the RTF's lack of additional mirrors. The trial court granted summary judgment in favor of defendants. Boettcher now appeals the trial court's decision, raising one assignment of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT."
 {¶ 10} Appellant argues that the trial court erred in granting defendants' motion for summary judgment because he presented "evidence by affidavits and depositions, which would permit reasonable minds to conclude that the product was defective in design," and such defect, i.e. the lack of additional mirrors, was a proximate cause of the accident. We agree.
 {¶ 11} This court conducts a de novo review of a trial court's decision on summary judgment, which means that "we apply the standards used by the trial court". Fink v. J-II Homes, Inc., Butler App. No. CA2005-01-021, 2006-Ohio-3083, ¶ 14, quoting Brinkman v. Doughty (2000),140 Ohio App.3d 494, 496. A court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344,346, 1993-Ohio-191. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence *Page 4 
of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.
 {¶ 12} Boettcher contends that there are genuine issues of material fact regarding the liability of the defendants under the Ohio products liability statutes provided under R.C. 2307.71 et seq. Specifically, Boettcher claims that he presented evidence indicating the existence of a genuine issue of material fact that the RTF was defectively designed under R.C. 2307.75.
 {¶ 13} In Ohio, product liability claims are governed by statute. See R.C. 2307.71 et seq. To determine whether the defendants are strictly liable for a design defect there must be a design defect and the defect must proximately cause the injuries to the plaintiff. R.C. 2307.73(A).[1] A negligent design defect claim, such as Boettcher's claim here, requires proof of three elements: "(1) duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury which was proximately caused by the breach." Briney v. Sears,Roebuck Co. (C.A.6, 1986), 782 F.2d 585, 587 (applying Ohio law). Proximate cause is "that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." Skerl v. Arrow International Inc., (N.D.Ohio 2001), 202 F.Supp.2d 748, 755.
 {¶ 14} Proximate cause is ordinarily a question of fact for the jury, but "where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury [to decide], and, as a matter of law, judgment must be given for the defendant." Aldridge v. ReckartEquip. Co. (Sept. 19, 2006), Gallia App. No. 04CA17, 2006-Ohio-4964, ¶ 79, quoting Case v. Miami *Page 5 Chevrolet Co. (1930), 38 Ohio App. 41, 45-46.
 {¶ 15} In granting defendants' motion for summary judgment, the trial court concluded that Boettcher had to "engage in impermissible inference stacking" in order to establish that the "lack of a driver's side mirror was the proximate cause of his injuries." In reaching its decision, the trial court determined that "it is mere speculation that if the RTF was equipped with a driver's side mirror that the operator would have looked back to his left," and "mere speculation and inference stacking to assume that had the operator looked back to his left, he would have seen [Boettcher] and been able to avoid the accident." While we are aware that speculation is insufficient to create a genuine issue of material fact in order to withstand summary judgment, such inference stacking is not present in this case. See, e.g., Miller v. Adamson (Sept. 16, 1996), Brown App. No. CA96-02-007, 1996 WL 520699.
 {¶ 16} The trial court relied on Vermett v. Fred Christen SonsCo. (2000), 138 Ohio App.3d 586, in granting defendants' motion for summary judgment. In Vermett, the Ohio Sixth District Court of Appeals found that summary judgment was appropriate because the plaintiff failed to establish any proximate causation between the alleged defect, i.e. the absence of a written warning on the pedal of a press brake machine, and his injury. Vermett at 612. The appellate court determined that the plaintiff failed to establish proximate cause because the plaintiff did not look at the pedal prior to using the machine which indicated that the absence, presence, or content of the written warning had no part in the accident. Id. at 612.
 {¶ 17} The trial court, in an attempt to relate Vermett to the case at bar, noted that "the operator of the RTF did not look at the alleged defect [just as] [t]he plaintiff in Vermett did not look at the pedal." The trial court concluded that, "[i]f the operator did not look back to his left, how could the lack of a mirror have proximately caused the accident?" However, we fail to see how Vermett relates to the facts of this case.
 {¶ 18} Here, the evidence Boettcher presented includes an affidavit from Dr. Thomas *Page 6 
Huston, who, after conducting a number of tests, found that an "in-the-cab overhead mirror" eliminated the "blind spot or danger zone in every instance as to the presence of a person within that zone." Dr. Huston also noted that the addition of a driver's side mirror "and/or an inside the cab overhead mirror * * * would allow the operator of the Gradall to look in the direction of travel forward and then undertake a right turn and see all pedestrian traffic within his field of vision." (emphasis added). Further, the evidence included an affidavit from David McClelland, a mechanical engineer, who noted that "the incident area is entirely within the operator's field of view when facing forward while utilizing driver's side and cab rearview mirrors," and that the operator of an RTF with mirrors "would not even have to necessarily be looking directly into the mirrors to notice someone in the incident hazardous area, that is, the path of the left rear wheel." Finally, Nancy Davish, an eye witness to the accident, provided a statement that indicated the RTF's speed would not have been an issue preventing the operator from stopping prior to hitting Boettcher.
 {¶ 19} As the trial court noted, it is undisputed that the operator moved the RTF forward, looked to his right, looked to his left — saw Boettcher walking to the left, looked to the front, and began turning to the right. As Boettcher's evidence indicates, the placement of an overhead mirror would not require the operator of the RTF to look to his left, or even to look directly into the mirror, in order to see someone in danger while navigating the RTF through a turn. As a result, with the presence of an overhead mirror, the operator's failure to look to the left, a fact that the trial court relies heavily on in granting the defendants' motion for summary judgment, is immaterial. Instead, because the operator looked to the front of the RTF prior to making the turn, the area in which an overhead mirror is undoubtedly placed, a question of fact exists as to whether he could have seen Boettcher in harms way and avoided the accident if the RTF was equipped with the additional mirrors.
 {¶ 20} Based upon the specific facts and evidence presented in this case, and *Page 7 
construing the evidence in a light most favorable to Boettcher, we find that there are issues of fact concerning whether the defendants' failure to equip the RTF with driver's side and overhead mirrors was the proximate cause of his injuries. A reasonable jury could conclude that the defendants had a duty to design the RTF to include a driver's side and overhead mirror. Therefore, Boettcher's sole assignment of error is sustained.
 {¶ 21} Based on the foregoing, we reverse the trial court's decision and remand the matter to the trial court for further proceedings according to law and consistent with this opinion.
 {¶ 22} Judgment reversed and cause remanded.
WALSH, P.J., and YOUNG, J., concur.
[1] After this case was filed, R.C. 2307.71 et seq. was amended by Am. Sub. S.B. 80, effective April 7, 2005. Therefore, the former version of the Ohio Product Liability Statute applies. *Page 1